Slip Op. 22-137

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **COOPER (KUNSHAN) TIRE CO., LTD. AND COOPER TIRE & RUBBER CO.,** | |
| Plaintiffs, | |
| **ITG VOMA CORP.,** | |
| Plaintiff-Intervenor, | |
| and | |
| **VOGUE TYRE & RUBBER CO.,** | |
| Consolidated Plaintiff, | **Before: Timothy M. Reif, Judge** |
| v. | **Consol. Court No. 20-00113** |
| **UNITED STATES,** | **PUBLIC VERSION** |
| Defendant, | |
| and | |
| **THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL & SERVICE WORKERS INT'L UNION, AFL-CIO, CLC,** | |
| Defendant-Intervenor. | |

## <u>OPINION</u>

[Sustaining Commerce's Remand Results.]

Dated: December 8, 2022

<u>Daniel J. Cannistra</u>, Crowell & Moring LLP, of Washington, D.C., argued for plaintiffs Cooper (Kunshan) Tire Co., Ltd. and Cooper Tire & Rubber Company.

**PUBLIC VERSION**

Jordan C. Kahn and Andrew T. Schutz, Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP, of Washington, D.C., argued for consolidated plaintiff Vogue Tyre & Rubber Co.

Nicholas R. Sparks, Hogan Lovells US LLP, of Washington, D.C., argued for plaintiff-intervenor ITG Voma Corporation.  With him on the brief were Jonathan T. Stoel and Craig A. Lewis.

Sosun Bae, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendant United States.  With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director.  Of counsel on the brief was Spencer Neff, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Nicholas J. Birch, Schagrin Associates, of Washington, D.C., argued for defendant-intervenor the United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO, CLC.  With him on the brief was Roger B. Schagrin.


      Denny Swift (portrayed by Milo Ventimiglia): "Car goes where your eyes go, Enz."[1]

* * *

      Reif, Judge:  Before the court is the remand results of the U.S. Department of Commerce ("Commerce") pursuant to the court's order in *Cooper (Kunshan) Tire Co. v. United States* ("*Cooper I*"), 45 CIT __, __, 539 F. Supp. 3d 1316, 1339-41 (2021).  *See Final Results of Redetermination Pursuant to Ct. Remand*, ECF No. 69 ("Remand

---

[1] THE ART OF RACING IN THE RAIN (20th Century Fox 2019).  Enz, whose full name is Enzo, is the film's narrator and, notably, a Golden Retriever (notably, also, not an Airedale, but highly impressive and adorable nevertheless), and who is voiced by Kevin Costner.

**PUBLIC VERSION**

Consol. Court No. 20-00113                                                    Page 3

Results").  In *Cooper I*, the court remanded Commerce's final determination in the

administrative review of the countervailing duty ("CVD") order on certain passenger

vehicle and light truck tires from the People's Republic of China ("China") for the period

of review ("POR") January 1, 2017, through December 31, 2017.  *See* 45 CIT at __, 539

F. Supp. 3d at 1339-41; *see also Countervailing Duty Order on Certain Passenger

Vehicle and Light Truck Tires from the People's Republic of China: Final Results of

Countervailing Duty Administrative Review; 2017*, 85 Fed. Reg. 22,718 (Dep't of

Commerce Apr. 23, 2020) (final determination) and accompanying Issues and Decision

Memorandum ("IDM") (Dep't of Commerce Apr. 15, 2020), PR 383.  The court ordered

Commerce to respond to six discrete instructions by providing further explanation.  *See*

45 CIT at __, 539 F. Supp. 3d at 1339-41.

On remand, Commerce responds to each distinct inquiry and continues to

conclude that, based on its application of adverse facts available ("AFA"), Cooper

(Kunshan) Tire Co., Ltd. ("Cooper Tire" or "CKT")[2] and Shandong Longyue Rubber Co.,

Ltd. ("Longyue")[3] (collectively, "respondents") used and benefited from the Export

Buyers Credit Program ("EBCP") administered by the Export-Import Bank of the

People's Republic of China ("China Export-Import Bank").  Remand Results at 2.  For

the following reasons, the court sustains Commerce's Remand Results.

---

[2] Cooper Tire is a subsidiary of Cooper Tire & Rubber Company ("CTRC").  Resp't
Selection Mem. (Feb. 8, 2019), CR 4, PR 49.

[3] Longyue is not a party to this litigation.

**PUBLIC VERSION**

## BACKGROUND

The court presumes familiarity with the facts, as set out in *Cooper I*, and recounts only those facts relevant to the issues before the court on remand.

On October 12, 2021, the court addressed whether Commerce's determination based on AFA that Cooper Tire and Longyue had used the EBCP was supported by substantial evidence.  *Cooper I*, 45 CIT __, 539 F. Supp. 3d 1316.[4]  With respect to the application of AFA, the court held that Commerce: (1) identified the gap in the record formed by the failure of the Government of China ("GOC") to provide certain EBCP-related information; (2) explained, for purposes of verification, the necessity of certain loan disbursement and partner and correspondent bank information but not the necessity of EBCP-related information about a USD 2 million contract threshold requirement; and (3) did not explain the reason that Commerce could not instead verify other information on the record.  *Id.* at __, 539 F. Supp. 3d at 1327-28.

In *Cooper I*, the court ordered that Commerce provide the following explanations on remand related to Commerce's application of AFA for the EBCP:

> (1) [E]xplain the reason that the information withheld by the GOC about the threshold requirement and the 2013 revisions was necessary to verify non-use by describing how the missing information prevented Commerce from taking the steps that it considered necessary to verify nonuse; (2)(a) explain the reason that the questionnaire statements by Cooper Tire of non-use by its customers are "unverifiable" by describing step-by-step Commerce's methodology for verifying non-use; (b) describe the extent to which the record would enable Commerce to understand the precise role that the

---

[4] In addition, the court declined to consider plaintiffs' Count II argument pertaining to "additional errors by Commerce."  *Cooper (Kunshan) Tire Co. v. United States*, 45 CIT __, __, 539 F. Supp. 3d 1316, 1337 (2021) (quoting Compl. at 4, ¶¶ 13-14, ECF No. 2).

> mandatory respondents would play in permitting customers to participate in the EBCP; (c) describe the information that Commerce would need from the mandatory respondents and/or the customers to determine whether either the mandatory respondents or their customers used the EBCP; (3) explain the sources that Commerce would need to look at to complete the process of verification, including any correspondence or communications of any nature (e.g., emails, letters, faxes, telephone calls, text messages) between the mandatory respondents or their customers and the GOC, the China Export-Import Bank and partner/correspondent banks; (4) explain whether it would be feasible — and, if not, why not — for Commerce to solicit and obtain the withheld information about the threshold requirement from the mandatory respondents or their customers; (5) if Commerce were to consider that obtaining and conducting a review of the sources of information identified in "(3)", above, were unduly burdensome, explain with particularity the reasons for this conclusion; and (6) explain the extent to which Commerce would be able to rely on information from mandatory respondents by explaining how, if at all, such information would be relevant and reliable for Commerce to establish non-use.  The court emphasizes that each of the aforementioned instructions for Commerce on remand is a distinct inquiry that requires a distinct individual response as well as clarification from Commerce in its redetermination.

*Id.* at __, 539 F. Supp. 3d at 1339-41.

On January 11, 2022, Commerce issued its draft redetermination ("Draft Remand Results").  Remand Results at 3 (citing Draft Results of Remand Redetermination (Jan. 11, 2022), *Cooper (Kunshan) Tire Co.*, Consol. Court No. 20-00113, 45 CIT __, Slip Op. 21-141 (Oct. 12, 2021)).  On January 21, 2022, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial Service Workers International Union, AFL-CIO (the "USW"), Vogue Tyre & Rubber Co. ("Vogue"), ITG Voma Corporation ("Voma") and Cooper Tire provided comments on the Draft Remand Results.  *Id.* at 4 (footnotes omitted).

**PUBLIC VERSION**

On February 2, 2022, Commerce filed its final Remand Results, in which Commerce responded to the court's remand order, addressed the parties' comments, continued to find that the respondents used the EBCP and did not change any subsidy rates. *See id.* at 4, 41-42.  On April 4, 2022, Cooper Tire, Cooper Tire & Rubber Company ("CTRC"), Voma and Vogue (collectively, "plaintiffs") provided comments on the Remand Results wherein plaintiffs continue to argue against the application of AFA. *See* Consol. Pl. and Consol. Pl.-Intervenor's Comments in Opp'n to Remand Redetermination ("Consol. Pls. Br.") at 1, ECF No. 75; Pls.' Comments on Final Remand Redetermination ("Pls. Br.") at 1, ECF No. 76.  On May 19, 2022, defendant United States (the "Government") and the USW responded to plaintiffs' comments.  *See* Def.'s Response to Comments Regarding Remand Redetermination ("Def. Br."), ECF No. 82; Def.-Intervenor United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Union, AFL-CIO, CLC Comments in Supp. of Remand Results ("Def.-Intervenor Br."), ECF No. 79.

On July 14, 2022, the court heard oral argument.  *See* Oral Arg., July 14, 2022, ECF No. 87.  On July 29, 2022, the parties provided responses to two follow-up questions.  *See* Def.-Intervenor's Answer to Ct.'s Post-Hr'g Questions, ECF Nos. 90-91; Def.'s Resp. to Post-Arg. Questions, ECF No. 92; Consol. Pls.' Resp. to Ct. Question, ECF No. 93; Pls.' Comments in Resp. to Suppl. Questions, ECF Nos. 94-95.  On August 4, 2022, the parties participated in a teleconference to discuss their responses. Teleconference, ECF No. 96.

**PUBLIC VERSION**

Consol. Court No. 20-00113                                                                 Page 7

**JURISDICTION AND STANDARD OF REVIEW**

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of

1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018), and 28 U.S.C. § 1581(c).[5]

On remand, the court will sustain Commerce's determinations "if they are in

accordance with the remand order, are supported by substantial evidence[] and are

otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 39 CIT __, __,

100 F. Supp. 3d 1349, 1355 (2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)); *see Prime

Time Com. LLC v. United States*, 45 CIT __, __, 495 F. Supp. 3d 1308, 1313 (2021)

("The results of a redetermination pursuant to court remand are also reviewed 'for

compliance with the court's remand order.'" (quoting *Xinjiamei Furniture (Zhangzhou)

Co. v. United States*, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014)), *aff'd*, No.

2021-1783, 2022 WL 2313968 (Fed. Cir. June 28, 2022); *see also Jiangsu Zhongji

Lamination Materials Co., (HK) v. United States*, 44 CIT __, __, 435 F. Supp. 3d 1273,

1276 (2020) (quoting *Xinjiamei Furniture (Zhangzhou) Co.*, 38 CIT at __, 968 F. Supp.

2d at 1259). Substantial evidence requires "more than a mere scintilla" of evidence.

*Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938). In addition, "[i]t is well-

established that an agency's action must be upheld, if at all, on the basis articulated by

the agency itself." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463

U.S. 29, 50 (1983) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156,

---

[5] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of
Title 19 of the U.S. Code, and references to the U.S. Code are to the 2018 edition.

Consol. Court No. 20-00113                                                        Page 8

168 (1962); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 539 (1981)).  "[I]n remand proceedings, an administrative agency must modify its original determination in accordance with the remand order."  *Dorbest Ltd. v. United States*, 35 CIT 136, 145, 755 F. Supp. 2d 1291, 1300 (2011).

## LEGAL FRAMEWORK

Commerce shall impose a countervailable duty if: (1) Commerce determines that a foreign government or public entity of a foreign country is "providing, directly or indirectly, a countervailable subsidy with respect to the manufacture, production, or export of a class or kind of merchandise imported, or sold (or likely to be sold) for importation, into the United States"; and (2) the U.S. International Trade Commission determines that "an industry in the United States is materially injured, or is threatened with material injury, or the establishment of an industry in the United States is materially retarded, by reason of [subject] imports."  19 U.S.C. § 1671(a).  A subsidy is countervailable when a foreign government or public entity of a foreign country provides for a specific enterprise or industry a financial contribution, which confers a benefit.  *Id.* § 1677(5).

## DISCUSSION

The court addresses whether Commerce complied with the remand order and whether Commerce's determination in which Commerce applied AFA to determine that

**PUBLIC VERSION**

Cooper Tire and Longyue used and benefitted from the EBCP is supported by

substantial evidence.

## I.      Whether Commerce complied with the remand order

The court concludes that Commerce complied with the remand order.

Commerce provided responses with the requested explanations or descriptions for each

of the court's enumerated instructions.  *See* Remand Results at 5-21; *Prime Time Com.*

*LLC*, 45 CIT at __, 495 F. Supp. 3d at 1313 (quoting *Xinjiamei Furniture (Zhangzhou)*

*Co.*, 38 CIT at __, 968 F. Supp. 2d at 1259); *see also Cooper I*, 45 CIT at __, 539 F.

Supp. 3d at 1339-41.

In the Remand Results, Commerce responded to the court's remand order in

*Cooper I* and addressed plaintiffs' comments on the Draft Remand Results.  Remand

Results at 5-41.

### 1.      Necessity of the withheld information on the threshold requirement and 2013 revisions

In response to the court's first instruction, Commerce explained the necessity of

the missing information related to the threshold requirement and 2013 revisions by

describing the impact of the missing information on Commerce's verification

methodology.  *Id.* at 5.  Commerce described its methodology as a step-by-step review

of balance sheets or tax returns followed by financing subledgers that detail loan

information, after which Commerce targets specific subledger entries and requests loan

applications or other documentation.  *Id.*  Commerce asserted that "[i]n selecting loans

to scrutinize, the reliability of the verification rests on whether Commerce can

intelligently determine on which loans to focus its attention."  *Id.*  Without information on

the existence of a USD 2 million threshold, Commerce claimed that it is unable to

"assess the scope of verification and effectively prove (or disprove)" EBCP use.  *Id.* at 6.

Commerce stated specifically that to know whether the threshold requirement remained

in place would "greatly limit[] the universe of potentially relevant loans under the

program and [could] significantly assist [Commerce] in targeting [its] verification of non-

use" and allow Commerce to avoid "mistakenly limit[ing] [its] verification" if the threshold

requirement were no longer in place.  *Id.*  Commerce asserted that due to time

limitations and the difficulty of verification without the threshold information,

Commerce's conclusions could otherwise be based on irrelevant data and, therefore, be

unreliable.  *Id.* at 6-7.

Commerce claimed further that the 2013 revisions: (1) "could contain" useful

information to support verification; and (2) are necessary because the respondents'

statements pertaining to non-use assert that the respondents "would be aware" of any

EBCP use by their customers given the alleged requirements in the implementing rules

as to exporter assistance and export insurance.  *Id.* at 7.

Commerce concluded that, moreover, "regardless of the significance of the 2013

revisions to the administrative measures, Commerce is unable to verify the non-use

information, because [Commerce] does not have a list of partner/correspondent banks,

which the Court has determined to be necessary for verification."  *Id.* at 8.  In other

**PUBLIC VERSION**

words, "Commerce submits that the Court's finding regarding the intermediary banks alone is sufficient to support the AFA finding." *Id.*

        In response to the Draft Remand Results, plaintiffs and defendant-intervenor provided comments. *See id.* at 21-24. Cooper Tire disputed the necessity of the threshold information to Commerce's ability to verify programs. *Id.* at 21-22 (citing *Chlorinated Isocyanurates from the People's Republic of China: Final Affirmative Countervailing Duty Determinations; 2012* ("*Isos from China*"), 79 Fed. Reg. 56,560 (Dep't of Commerce Sept. 22, 2014) and accompanying IDM (Dep't of Commerce Sept. 8, 2014) at 15; *Certain Vertical Shaft Engines Between 99cc and up to 255cc, and Parts Thereof, from the People's Republic of China: Final Determination in the Countervailing Duty Investigation* ("*VSE from China*"), 86 Fed. Reg. 14,071 (Dep't of Commerce Mar. 12, 2021) and accompanying IDM (Dep't of Commerce Mar. 5, 2021) at cmt. 2). Vogue and Voma raised Commerce's determination of non-use in *MAE from China*, in which the same information from the GOC was missing, to argue that Commerce should reach the same conclusion here. Remand Results at 22-23 (citing *Certain Mobile Access Equipment and Subassemblies Thereof from the People's Republic of China: Final Affirmative Determination in the Countervailing Duty Investigation* ("*MAE from China*"), 86 Fed. Reg. 57,809 (Dep't of Commerce Oct. 19, 2021) and accompanying IDM (Dep't of Commerce Oct. 12, 2021) at cmt. 5, 55-56). They also insisted that Commerce "confuses making verification easier with making verification impossible." *Id.* at 23.

**PUBLIC VERSION**

The USW responded that *MAE from China* and *VSE from China* were distinct from the situation here and cited several recent determinations in which Commerce nonetheless applied AFA.  *Id.* at 24 (citing Letter from Pet'r, re: Passenger Vehicle and Light Truck Tires from the People's Republic of China: Comments on Draft Redetermination (Jan. 21, 2022) ("Pet'r's 2022 Letter") at 8-11 (citing *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 48,393 (Dep't of Commerce Aug. 30, 2021) and accompanying IDM (Dep't of Commerce Aug. 23, 2021) at cmt. 1; *Pentafluoroethane (R-125) from the People's Republic of China: Final Affirmative Countervailing Duty Determination* ("*Pentafluoroethane*"), 87 Fed. Reg. 1,110 (Dep't of Commerce Jan. 10, 2022) and accompanying IDM (Dep't of Commerce Dec. 30, 2021) at cmt. 1)).  The USW drew a parallel to determinations in which Commerce found that it could not rely on non-certified statements to fill the information gap.  *See* Remand Results at 24 (citing Pet'r's 2022 Letter at 11 (citing *Certain Aluminum Foil from the People's Republic of China: Final Results of Countervailing Duty Administrative Review*; *2019* ("*Aluminum Foil from China*"), 86 Fed. Reg. 73,249 (Dep't of Commerce Dec. 27, 2021) and accompanying IDM (Dep't of Commerce Dec. 17, 2021) at 21)).

Commerce responded to the parties' comments by insisting that in EBCP cases, unlike in other scenarios involving value-added tax or import duties, only a subset of loans is relevant; therefore, Commerce continued, its inability to "identify the set of loans

**PUBLIC VERSION**

that should be scrutinized" due to the lack of the withheld information means that

Commerce's attempted verification would be unlikely to "generate accurate results."  *Id.*

at 24-28 (comparing EBCP verification instead to tax benefit verification[6] and reiterating

that "the program could not be verified using 'standard' or 'ordinary' methods, and that

the issue is not simply a matter of whether verification is more or less easy for

Commerce"); *see also* Def.-Intervenor Br. at 5 (citing Remand Results at 27-28)

(describing complications posed by EBCP verification additional to those that might

arise in an average tax subsidy verification scenario).[7]

Commerce also distinguished two recent Commerce determinations raised by

Vogue and Voma to support Commerce's assertion that it did not need to "determine in

this remand redetermination that the EBCP can be verified."  Remand Results at 28-30;

*see VSE from China* IDM at cmt. 2; *MAE from China* IDM at cmt. 5.  Commerce said

that *VSE from China* was inapposite because there was only one U.S. customer of the

relevant respondent, which provided "information . . . demonstrating that [the customer]

did not use the EBCP," whereas no certifications or other customer information were on

---

[6] Commerce explained: "[I]f the government were unwilling to provide a sample tax
return with the relevant annex or schedule, with the relevant line item marked and
translated, it would not simply be a matter of what is 'easier for Commerce,' but what is
likely to generate accurate results."  Remand Results at 28.

[7] In its brief, the Government notes further that it "typically require[s] parties to report all
forms of financing for verification."  Def. Br. at 13.  The Government also explains that
its "spot-check methodology" would be ineffective here because the EBCP is "atypical"
in that the withheld information precludes Commerce's ability to understand the EBCP
and conduct a spot-check.  *Id.* at 15-16 (citing Remand Results at 25, 27).

**PUBLIC VERSION**

Consol. Court No. 20-00113                                                                 Page 14

the record here.  Remand Results at 29-30 (citing *VSE from China* IDM at cmt. 2).

Commerce also noted that *VSE from China* involved a "facts available" determination

whereby Commerce accepted "non-use assertions and the supporting information

provided by the respondent and its customer" based on what Commerce described as

its "recogni[tion] that the court has directed Commerce in numerous decisions to

consider whether any available information provided by respondents may be sufficient

to fill the gap of missing record information in considering claims of non-use for the

EBCP," despite Commerce's continued concerns about the EBCP.  Remand Results at

29 (quoting *VSE from China* IDM at 23); *see also* Def.-Intervenor Br. at 9.

Commerce also differentiated *MAE from China* by noting that, in that case,

customer certifications of non-use were on the record, "which Commerce considered a

prerequisite for issuing questionnaires to the U.S. customers and, subsequently, for

attempting to verify the non-use certifications from the U.S. customers."  Remand

Results at 30 (quoting *MAE from China* IDM at cmt. 5) (citing *Certain Mobile Access*

*Equipment and Subassemblies Thereof from the People's Republic of China:*

*Preliminary Affirmative Countervailing Duty Determination* ("*MAE from China*

*Preliminary Determination*"), 86 Fed. Reg. 41,013 (Dep't of Commerce July 30, 2021)

and accompanying Preliminary Decision Memorandum ("PDM") (Dep't of Commerce

July 26, 2021) at 21.  In addition, Commerce noted that, in that case, Commerce

referenced the court's insistence that Commerce seek to determine whether it could fill

the gap.  *Id.* at 29-30; *see also* Def. Br. at 20 (citing *MAE from China Preliminary*

**PUBLIC VERSION**

Consol. Court No. 20-00113                                                                Page 15

*Determination*, 86 Fed. Reg. 41,013 and accompanying PDM at 21); Def.-Intervenor Br.

at 11-12.[8]

<blockquote>

**2.      Explanations as to information needed for verification**

**a.      The reason that the respondents' non-use claims are "unverifiable"**

</blockquote>

Commerce in its Remand Results next explained the reason that the

respondents' non-use claims are "unverifiable" in relation to Commerce's verification

methodology, which, as stated above, involves the review of financial and loan

information.  Remand Results at 8-11.  Commerce summarized that Longyue: (1)

provided its emails to customers asking about any EBCP credit use; (2) stated that the

China Export-Import Bank, other state owned or controlled banks and Longyue's export

customers did not reach out to Longyue about EBCP credits; and (3) stated that it did

not obtain export insurance required by the EBCP.  *Id.* at 9 (citing Letter from deKieffer

& Horgan, PLLC to Sec'y of Commerce, re: *Passenger Vehicle and Light Truck Tires

from China*: Longyue Sec. III Quest. Resp. (Apr. 18, 2019) ("Longyue QR") at 25, Exs.

24-25, CR 46-77, PR 97-98).  Further, Commerce noted that Cooper Tire stated that it:

(1) was "not aware" of any customer EBCP use; (2) did not take any steps to permit or

assist its customers to use EBCP credit; (3) was not contacted by any customers about

---

[8] Commerce stated in *MAE from China* that: "[W]hile we continue to find that the GOC's
non-cooperation significantly impedes and prevents a complete verification of the EBC
program, in recognition of court precedent, we find that neither {respondent} used the
EBC program."  Remand Results at 29 (second alteration in original) (quoting *MAE from
China* IDM at 56).  Commerce also noted that "its understanding of what is needed to
verify non-usage evolved" after *Isos from China*.  *Id.* at 39.

**PUBLIC VERSION**

the EBCP; and, therefore, (4) considered EBCP use "impossible." *Id.* at 9-10 (quoting

Letter from Pepper Hamilton LLP to Sec'y of Commerce, re: *Certain Passenger Vehicle*

*and Light Truck Tires from the People's Republic of China*/CKT Resp. to Initial Quest.

Resp. (Apr. 18, 2019) ("Cooper Tire QR") at III-32, CR 30-45, PR 88-96).  Commerce

concluded that it could not verify the respondents' non-use claims because the

information in the 2013 revisions was unavailable. *Id.* at 10.  That information,

Commerce noted, would be necessary to confirm the alleged requirements that the

respondents' reference regarding exporter assistance and/or insurance. *Id.*

Separately, Commerce detailed, it would be unable to verify the alleged lack of

correspondence between the respondents and customers or banks using its previously

described methodology. *Id.* at 10-11 (citing *Changzhou Trina Solar Energy Co. v.*

*United States*, 40 CIT __, __, 195 F. Supp. 3d 1334, 1355 (2016)).

**b.      Whether the record enables Commerce to understand
the role of the respondents in any customer EBCP use**

Further, Commerce concluded on remand that the record did not enable

Commerce to form a "reliable understanding" of the respondents' roles in facilitating

customer EBCP use. *Id.* at 12.  Namely, Commerce noted that Longyue and the GOC

provided merely "outdated" EBCP documentation — 1995 implementation rules, which

both provided, and 2000 administrative measures, which the GOC provided. *Id.* at 12,

38.  Moreover, the GOC did not provide a sample loan application or other supporting

documentation on exporter participation. *Id.*

**PUBLIC VERSION**

### c.   Information Commerce would need from the respondents and customers to determine EBCP use

Commerce specified information that it would request to demonstrate whether the respondents or their customers used the EBCP: (1) reports of all financing from every customer; and (2) customer financial statements or tax returns.  *Id.* at 13. Nonetheless, Commerce asserted that such information would still be of "limited value to establish non-use" due to the absence of the partner/correspondent bank information and information as to whether the threshold requirement remains in place.  *Id.* at 13-14; *see* Def. Br. at 14 ("Commerce would be unable to verify the respondents' claims of non-use even with full cooperation from respondents' customers.").  Commerce stated further: "In instances with numerous U.S. customers, it is unlikely we would get full responses from all of the respondents' customers."  Remand Results at 14.  Moreover, Commerce concluded that it might not receive full, voluntary cooperation from third-party customers, particularly when they did not provide non-use certifications, meaning that requesting responses from them would be futile and could still result in the application of AFA.  *Id.* at 14, 41.  Commerce later reiterated that information from third parties would be unreliable and ineffective at filling the identified gap.  *Id.* at 31.

### 3.   Sources that Commerce could examine to verify non-use

Commerce addressed next the court's instruction to explain sources to which Commerce would need to look to accomplish verification.  *Id.* at 14.  Commerce responded that "[r]equests for correspondence/communications are not amenable to completeness tests," upon which Commerce's verification is based.  *Id.* at 14-15

**PUBLIC VERSION**

Consol. Court No. 20-00113                                              Page 18

("[V]erification relies on a completeness test whereby Commerce ensures it has a list of

all relevant transactions by tying the list to audited financial statements or tax returns.");

*see id.* at 17.[9]  Commerce reiterated that it cannot prove a negative — namely, that

Commerce is unable to confirm that the respondents did *not* communicate with the

China Export-Import Bank or other banks or customers about the EBCP.  *Id.* at 15.

Even if Commerce could confirm such interactions, Commerce stated that it would still

not know whether the EBCP requires such communications due to the lack of the 2013

revisions.  *Id.* at 15, 17; *see also* Def. Br. at 9.  Commerce stressed that it could not

verify the respondents' statements pertaining to non-use without the cooperation of the

GOC, noting that "standard or ordinary verification methods will not generate meaningful

and accurate results when applied to the EBCP."  Remand Results at 15, 37.

> **4.    Whether Commerce could obtain the threshold information from the respondents or their customers**

Commerce then replied to the court's instruction as to whether Commerce could

seek the threshold information from elsewhere.  *See id.* at 15-17.  Commerce stated

that it "does not know how the respondents or their customers would obtain copies of

the 2013 administrative measures" because the GOC has asserted that the China

Export-Import Bank has stated that the measures are "internal."  *Id.* at 16 (quoting Letter

from Curtis, Mallet-Prevost, Colt & Mosle LLP to Sec'y of Commerce, re: GOC's Suppl.

Quest. Resp. *Certain Passenger Vehicle and Light Truck Tires from the People's*

---

[9] Commerce also referenced its earlier statements provided in the Remand Results.
Remand Results at 14.

**PUBLIC VERSION**

*Republic of China* (July 8, 2019) ("GOC SQR") at 9, PR 135-136); *see also* IDM at 20. Commerce added that the respondents and their customers would not appear to have "the requisite expertise or experience needed to speak on behalf of the GOC" about a program that neither claims to have used.  *Id.* at 16-17.  Commerce also raised "an additional problem of knowing what to look for once [relevant] loans are identified," underscoring further the need for the 2013 revisions beyond just the threshold information.  *Id.* at 15-16.

> **5.     Whether it is unduly burdensome for Commerce to seek and review other sources of information to verify non-use**

In addition, Commerce explained that the potential undue burden of relying on other sources of information to pursue verification could depend on the scope of the request for information or correspondence.  *Id.* at 17-18.  For instance, Commerce stated that requesting China Export-Import Bank correspondence, threshold information or the 2013 revisions from the respondents would not raise an undue burden but that requesting "'complete correspondence and communications' without any limiting parameters" would.  *Id.*  As to a request for loan information, Commerce noted that it would "be required to collect and analyze information from [[    ]] customers" — [[    ]] from Cooper Tire and [[    ]] from Longyue — and highlighted the values of Cooper Tire's and Longyue's sales to the United States — [[                                                    ]], respectively.  *Id.* at 18.  Commerce insisted that "this process would be onerous and nearly impossible for Commerce to complete with accuracy, especially because there were 27 other alleged programs subject to the review."  *Id.* at 19.

**PUBLIC VERSION**

Even if Commerce sought information from all customers, Commerce responded that it could not review all lending "with a tolerable degree of accuracy" due to the inability to know whether Commerce had received all requested documents and the lack of information as to the "parameters" of the ECBP.  *Id.* at 17-19 (equating such a review with looking for "a needle in a haystack"); *see* Def. Br. at 12-13 (describing its necessary review of "*every* loan received by the respondents' customers" as "unduly burdensome, if not impossible, to carry out with a 'tolerable degree of accuracy'" (citing Remand Results at 19; *Cooper I*, 45 CIT at __, 539 F. Supp. 3d at 1332)); *see also* Def.-Intervenor Br. at 4 (citing Remand Results at 13-15, 25) (summarizing that Commerce cannot identify potential EBCP use, examine successfully or timely any customer information or attempt reasonably to verify without the withheld information). Commerce clarified that the difficulty of such a verification is a "direct consequence" of the GOC's failure to cooperate.  Remand Results at 34-35.

Commerce explained further that "requesting [certain financing] information from each customer would lead to burdensome and complex verification measures that are unlikely to yield reliable results."  *Id.* at 33.  Moreover, Commerce stated that looking at only a "subset of customers" would pose an "additional impediment to an accurate verification."  *Id.* at 33-34 (summarizing that plaintiffs are asking Commerce to "attempt verification hamstrung by an inadequate understanding of the program"); *see id.* at 41 (calling a "spot-check [of] the customers by issuing questionnaires only to a subset thereof" a "half measure[]" to address the gap created by the GOC); *see also* Def.-

Intervenor Br. at 14 (discussing *Multilayered Wood Flooring from the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review, and Intent to Rescind Review, in Part; 2019* ("*Multilayered Wood Flooring*"), 86 Fed. Reg. 73,244 (Dep't of Commerce Dec. 27, 2021) and accompanying IDM (Dep't of Commerce Dec. 17, 2021) at 19, in which a respondent and its U.S. customers did not respond fully).  In response to Vogue and Voma's insistence that there would be a "clear paper trail" for Commerce to follow, Commerce raised bank confidentiality and verification complexity and burdensomeness concerns if Commerce needed to follow up with correspondent banks, of which Commerce would still not know the identities.  Remand Results at 35.[10]

### 6.   The extent to which Commerce would be able to rely on information from the respondents to establish EBCP non-use

Last, Commerce responded to the court's remand instruction that Commerce explain the extent to which it would be able to rely on information from the respondents to establish EBCP non-use.  *Id.* at 19.  Commerce stated that it could not rely on the information provided to verify non-use because Commerce: (1) could not confirm (a) the receipt of all correspondence between the respondents and the China Export-Import Bank or other state owned or controlled banks, (b) the absence of affirmative customer email responses as to EBCP use, and (c) the necessity that the respondents take any steps to enable their customers' EBCP use without the 2013 revisions; (2) did not

---

[10] As the court concluded in *Cooper I*, Commerce reiterated that it could not obtain "meaningful" access to pertinent information at the China Export-Import Bank.  Remand Results at 36 (citing *Cooper I*, 45 CIT __, Slip Op. 21-141 (Oct. 12, 2021) at 26); *see Cooper I*, 45 CIT at __, 539 F. Supp. 3d at 1333-34.

**PUBLIC VERSION**

receive certified customer statements; (3) did not think that the respondents could

provide the 2013 revisions or other information on the threshold requirement given the

GOC's statement on their status; and (4) still lacked the list of partner and

correspondent banks.  *Id.* at 20-21.

Commerce determined that there was a lack of any "*certified* statements [of non-

use] signed by the customers themselves" on which Commerce could rely.  *Id.* at 20-21

(emphasis supplied).[11]  Commerce explained that the lack of certifications "raise[d]

doubts as to whether any communication ever took place between the respondents and

---

[11] Several recent EBCP cases have included certifications of non-use by U.S.
*customers*.  *See, e.g.*, *Both-Well (Taizhou) Steel Fittings, Co. v. United States* ("*Both-Well I*"), 46 CIT __, __, 557 F. Supp. 3d 1327, 1330 (2022); *Guizhou VI*, 45 CIT at __,
523 F. Supp. 3d at 1356; *Jiangsu Zhongji Lamination Materials Co. v. United States*, 43
CIT __, __, 405 F. Supp. 3d 1317, 1331 (2019); *Changzhou Trina Solar Energy Co. v.
United States* ("*Changzhou I*"), 42 CIT at __, 352 F. Supp. 3d at 1324 (citations
omitted).

For examples of *customer* self-certifications of non-use in other cases, see, e.g., Letter
from Perkins Coie LLP to Sec'y of Commerce, re: Certain Mobile Access Equipment
and Subassemblies Thereof from China; AD Investigation; LGMG Initial Quest. Resp.
(June 15, 2021) ("LGMG IQR"), Ex. I-37, bar code 4134012-01 (providing, in *MAE from
China*, a signed customer declaration stating that the customer purchased the subject
merchandise during the period of investigation and "did not finance any of its purchases
. . . by using the [EBCP]"); Letter from Fox Rothschild LLP to Sec'y of Commerce, re:
Pentafluoroethane (R-125) from the People's Republic China: Submission of Zhejiang
Sanmei's New Subsidy Allegations Resp. (June 24, 2021) ("Sanmei New Subsidy
Allegations Resp.") at 2, Ex. N-2, bar code 4136457-01 (including, in *Pentafluoroethane*,
partially redacted certifications from customers stating that "[w]e hereby certify that we
never received any export buyer's credits from China Export-Import Bank or any other
entities").

By contrast, *respondents* in this case provided certain statements and other evidence to
support the respondents' claims of non-use by their customers.  *See infra* Section II.C.2
for a discussion of these submissions.

**PUBLIC VERSION**

their customers or whether the non-use statements are based solely on assumptions about how the program currently operates." *Id.* at 21.  Further, Commerce stated that requesting customer loan information "would be unduly burdensome on Commerce both from the perspective of time and resources and from the perspective of being so burdensome as to be unlikely to be performed accurately." *Id.*  Commerce concluded that it did not believe that the respondents could fill the gap in the record.  *Id.* at 36.

In *Cooper I*, 45 CIT at __, 539 F. Supp. 3d at 1339-41, the court instructed Commerce to clarify six aspects of its application of AFA for the EBCP.  As described above, Commerce responded to each of the six directions in the court's remand order. *See* Remand Results at 5-21; *see also id.* at 24-41 (providing further clarifications in responses to plaintiffs' and the USW's comments on the Draft Remand Results). Accordingly, the court concludes that Commerce's Remand Results are in accordance with the remand order in *Cooper I*.[12]

**II.    Whether Commerce's application of AFA to determine that Cooper Tire and Longyue used the EBCP was supported by substantial evidence**

**A.    Legal framework**

As stated in *Cooper I*, "[d]uring a CVD investigation, Commerce requires information from both the foreign government alleged to have provided a subsidy and the respondent companies alleged to have received the subsidy."  45 CIT at __, 539 F.

---

[12] However, whether the substance of such responses supports the conclusion that Commerce's application of AFA was supported by substantial evidence is addressed separately *infra* Section II.

**PUBLIC VERSION**

Supp. 3d at 1326 (citing *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365,

1369-70 (Fed. Cir. 2014); *Essar Steel Ltd. v. United States*, 34 CIT 1057, 1070, 721 F.

Supp. 2d 1285, 1296 (2010), *rev'd on other grounds by* 678 F.3d 1268 (Fed. Cir. 2012)).

Such information is subject to verification by Commerce.  19 U.S.C. § 1677m(i)(1); *see*

19 C.F.R. § 351.307(d) (noting that Commerce "verif[ies] the accuracy and

completeness of submitted factual information").

Commerce "shall . . . use the facts otherwise available in reaching the applicable

determination" if the record lacks "necessary information" or if a party: (1) withholds

requested information; (2) fails to provide timely information "in the form and manner

requested"; (3) "significantly impedes a proceeding"; or (4) provides unverifiable

information.  19 U.S.C. § 1677e(a).  Further, if Commerce finds that a party did not

cooperate "to the best of its ability to comply with a request for information," Commerce

may apply an adverse inference.  *Id.* § 1677e(b).  If Commerce determines that a

submission is deficient in that it "does not comply with the request," Commerce "shall

promptly inform the person submitting the response of the nature of the deficiency and

shall, to the extent practicable, provide that person with an opportunity to remedy or

explain the deficiency in light of the time limits established for the completion of

investigations or reviews."  *Id.* § 1677m(d).  *See generally* 19 U.S.C. § 1677m(e)

(stating that Commerce must consider other necessary information submitted by an

interested party if such information is timely, verifiable, complete enough to be reliable,

provided to the best of the party's ability and usable "without undue difficulties");

**PUBLIC VERSION**

*Papierfabrik August Koehler SE v. United States*, 38 CIT __, __, 7 F. Supp. 3d 1304,

1312 (2014) ("This Court has held that the 'remedial provisions' of section 1677m(d)

'are not triggered unless the respondent has met all of the five enumerated criteria' of

section 1677m(e)." (quoting *Tung Mung Dev. Co. v. United States*, 25 CIT 752, 789

(2001))).[13]

      The Court has established that the application of AFA due to the failure of a

foreign government to cooperate may impact a respondent company despite that

company's own cooperation.  *Cooper I*, 45 CIT at __, 539 F. Supp. 3d at 1326-27 (citing

*Fine Furniture*, 748 F.3d at 1373); *see also Guizhou Tyre Co. v. United States*

("*Guizhou VI*"), 45 CIT __, __, 523 F. Supp. 3d 1312, 1357 (2021) (citing *Fine Furniture*,

748 F.3d at 1373).  Still, Commerce "should seek to avoid such impact if relevant

information exists elsewhere on the record."  *Archer Daniels Midland Co. v. United*

*States*, 37 CIT 760, 769, 917 F. Supp. 2d 1331, 1342 (2013) (citing *Fine Furniture*

---

[13] The court acknowledges that the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") recently found that "the statutory entitlement to notice and opportunity to remedy any deficiency is unqualified in the circumstances of this case."  *Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1384 (Fed. Cir. 2022), *modified and petition for panel reh'g denied per curiam*, Order (Nov. 23, 2022), ECF No. 77.  That case is inapposite because, inter alia, as discussed *infra* Section II.C.2, Commerce in the present case did not apply AFA due to any deficiencies with the responses of the respondents; instead, Commerce applied AFA due to deficiencies in the GOC's responses.  *See* IDM at 18-20; *see also Fine Furniture (Shanghai) Ltd. v. United States*, 36 CIT 1206, 1212 n.10, 865 F. Supp. 2d 1254, 1262 n.10 (2012), *aff'd*, 748 F.3d 1365 (Fed. Cir. 2014).  In addition, the court addresses *infra* Section II.C.2 the verifiability and usability of the information that the respondents submitted — which relate to the criteria under 19 U.S.C. § 1677m(e)(2) and (e)(5).

**PUBLIC VERSION**

Consol. Court No. 20-00113                                                                 Page 26

*(Shanghai) Ltd. v. United States*, 36 CIT 1206, 1212, 865 F. Supp. 2d 1254, 1262

(2012), *aff'd*, 748 F.3d 1365 (Fed. Cir. 2014)).

> In an EBCP case, the Court has determined further:

> [T]o apply an adverse inference that a cooperating party benefited from the EBCP based on the GOC's failure to cooperate, Commerce must: (1) define the gap in the record by explaining exactly what information is missing from the record necessary to verify non-use; (2) establish how the withheld information creates this gap by explaining why the information the GOC refused to give was necessary to verify claims of non-use; and (3) show that only the withheld information can fill the gap by explaining why other information, on the record or accessible by respondents, is insufficient or impossible to verify.

*Jiangsu Zhongji Lamination Materials Co. v. United States*, 43 CIT __, __, 405 F. Supp.

3d 1317, 1333 (2019) (citing *Changzhou Trina Solar Energy Co. v. United States*

("*Changzhou I*"), 42 CIT __, __, 352 F. Supp. 3d 1316, 1326-27 (2018); *Guizhou Tyre*

*Co. v. United States* ("*Guizhou II*"), 43 CIT __, __, 399 F. Supp. 3d 1346, 1352-53

(2019); *Clearon Corp. v. United States*, 43 CIT __, __, 359 F. Supp. 3d 1344, 1360

(2019)); *accord Guizhou VI*, 45 CIT at __, 523 F. Supp. 3d at 1361 (quoting *Jiangsu*

*Zhongji Lamination Materials Co.*, 43 CIT at __, 405 F. Supp. 3d at 1333); *Cooper I*, 45

CIT at __, 539 F. Supp. 3d at 1327.

    **B.**    **Positions of the parties**

        **1.**    **Necessity of threshold information to verify non-use**

    Plaintiffs argue that the threshold information is unnecessary to verify non-use.

Pls. Br. at 3; Consol. Pls. Br. at 24.  In addition, Cooper Tire and CTRC insist that EBCP

is "no different than other loan programs that Commerce has verified in the past" and

**PUBLIC VERSION**

Consol. Court No. 20-00113                                                     Page 27

assert that it would be "readily apparent if loans are part of the EBCP" based on a

review of the financial information in a company's balance sheets or, if need be, a call to

a customer's banker.  Pls. Br. at 3-5; *see also* Consol. Pls. Br. at 18-19 (stating that

Commerce can determine if there were any loans and, if so, if they were under the

EBCP), 21.  Vogue and Voma insist that Commerce could review customers' accounts

payable loan documentation to clarify whether the loan is a part of the EBCP.  Consol.

Pls. Br. at 20, 22.  Cooper Tire and CTRC argue further that Commerce could conduct

sampling or use "the same verification procedures" as in *VSE from China*.  Pls. Br. at 6;

*see also* Consol. Pls. Br. at 7, 23, 26-27 (discussing that Commerce could use a "spot-

check methodology," even in situations in which a customer has many loans).

   The Government stresses that Commerce explained on remand its verification

methodology and the importance of knowing whether the USD 2 million threshold

requirement was still in place for carrying out successfully its verification process by

tailoring it or avoiding tailoring it mistakenly to larger loans.  Def. Br. at 6 (citing Remand

Results at 5-6), 14 (citing Remand Results at 7-9); *see also* Def.-Intervenor Br. at 4.[14]

The Government also notes that, given the absence of certain key information in the

record, Commerce would be unable to determine whether loans are part of the EBCP or

"which banks to call."  Def. Br. at 15-16 (citing Remand Results at 27).

---

[14] The Government notes also that Commerce raised the 2013 revisions as a source of
information "that could have guided Commerce to the relevant transactions at
verification."  Def. Br. at 6-7 (citing Remand Results at 7-8).

**PUBLIC VERSION**

### 2.      Use of other information on the record to fill the gap

To support their arguments that information on the record can fill the gap, the parties compare Commerce's approach here with its approach to verification of the EBCP in recent proceedings.

Plaintiffs maintain that Commerce could reach out to the respondents' customers if it needed information from them.  *See* Pls. Br. at 7-9; Consol. Pls. Br. at 29-31. Specifically, Cooper Tire and CTRC argue that "Commerce has a well-established practice of soliciting third-party data in its proceedings."  Pls. Br. at 7, 12-14 (quoting *MAE from China* IDM at 49-50).  Vogue and Voma raise that Commerce would need to request information from at least some customers to calculate the benefit and benchmark if Commerce were to find actual EBCP use, regardless of Commerce's position on the complexity of obtaining third-party information.  Consol. Pls. Br. at 29-31. As to third party participation at verification, Vogue and Voma state: "Commerce is not permitted to decline to solicit critical information and instead apply AFA based on conjecture as to what such responses would reveal or who would respond."  *Id.* at 30 (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed Cir. 2009)).[15]

---

[15] Vogue and Voma also argue that Commerce should have pursued verification at the China Export-Import Bank.  Consol. Pls. Br. at 22-23 (citing *Countervailing Duty Investigation of Certain Biaxial Integral Geogrid Products from the People's Republic of China: Final Affirmative Determination and Final Determination of Critical Circumstances, in Part*, 82 Fed. Reg. 3,282 (Dep't of Commerce Jan. 11, 2017) (final determination) and accompanying IDM (Dep't of Commerce Jan. 4, 2017) at cmt. 1). *But see* Def Br. at 18 (noting limited access to the China Export-Import Bank (citing (footnote continued)

**PUBLIC VERSION**

Consol. Court No. 20-00113                                                    Page 29

Vogue and Voma submit that Commerce should ascertain usage by U.S.

companies by following its practice for loan programs in CVD cases that do not involve

China, in which Commerce asks the respondent whether it received a loan covered by

the program at issue.  *Id.* at 10.  Cooper Tire and CTRC add that EBCP verification is

no more burdensome than verification of other loan programs.  Pls. Br. at 9-10.

In addition, Cooper Tire and CTRC argue that Cooper Tire's statement that it

lacked knowledge of any EBCP use by its customers means that Commerce cannot find

the EBCP to have conferred a benefit on Cooper Tire.  *Id.* at 11-12.  They assert that

Commerce can confirm Cooper Tire's statement by reviewing the pertinent financial

information, not correspondence.  *Id.* at 10.

Still, Vogue and Voma argue here that Commerce needed only the respondents'

statements, which Vogue and Voma submit were "certified pursuant to [Commerce]

regulation."  Consol. Pls. Br. at 13-14 (citing *Cooper I*, 45 CIT at __, 539 F. Supp. 3d at

1336; 19 C.F.R. § 351.303(g); *MAE from China* IDM at 55); *see also id.* at 9-10.  They

---

Letter from Curtis, Mallet-Prevost, Colt & Mosle LLP to Sec'y of Commerce, re: GOC's
Initial Quest. Resp. *Certain Passenger Vehicle and Light Truck Tires from the People's
Republic of China* (Apr. 18, 2019) at 129-130, PR 73); *Cooper I*, 45 CIT at __, 539 F.
Supp. 3d at 1331 (holding that screenshots provided by the China Export-Import Bank
are insufficient in terms of access).  This court has noted previously that access to the
China Export-Import Bank has been "repeatedly denied" and that Commerce need not
seek access to the bank to verify non-use.  *Guizhou VI*, 45 CIT at __, 523 F. Supp. 3d
at 1373-74 (citing *RZBC Grp. Shareholding Co. v. United States*, Slip Op. 16-64, 2016
WL 3880773 (CIT June 30, 2016); *Changzhou Trina Solar Energy Co. v. United States*,
40 CIT __, __, 195 F. Supp. 3d 1334, 1354 (2016)).  In *Cooper I*, the court reached a
similar conclusion.  45 CIT at __, 539 F. Supp. 3d at 1333-34.  Accordingly, the court
does not address this argument further.

**PUBLIC VERSION**

argue that Commerce can verify the respondents' statements based on their role in the EBCP and because there would be a "clear paper trail" for Commerce to follow. Consol. Pls. Br. at 12, 17.  The parties argue that if Commerce needs anything, "a list of loans from banks" would suffice.  *Id.* at 13.

Vogue and Voma assert further that Commerce violated 19 U.S.C. § 1677m(d) by not issuing supplemental questionnaires to the respondents to address the deficiency in the record.  *Id.* at 14-15.  The two parties criticize Commerce for noting that the respondents did not submit customer self-certifications when Commerce never asked the respondents to provide such certifications or any other information.  *Id.* at 15-16.  In addition, Vogue and Voma state that the application of AFA to a cooperating respondent should be undertaken "only as a last resort."  *Id.* at 23 (citing *GPX Int'l Tire Corp. v. United States*, 37 CIT 19, 21 & n.2, 942 F. Supp. 2d 1343, 1348 & n.2, 1362 (2013), *aff'd*, 780 F.3d 1136 (Fed. Cir. 2015)).

The parties discuss two Commerce determinations and a decision of this Court with respect to Commerce's recent treatment of EBCP verification: *MAE from China*, *VSE from China* and *Risen Energy Co. v. United States*, 46 CIT __, 570 F. Supp. 3d 1369 (2022).  Vogue and Voma argue that in *MAE from China* Commerce sought and verified customer information for the respondents — Lingong Group Jinan Heavy Machinery Co., Ltd. ("LGMG") and Zhejiang Dingli Machinery Co., Ltd. ("Dingli") — even without the withheld information from the GOC.  Consol. Pls. Br. at 1-2 (citing *MAE from China* IDM at cmt. 5); *see MAE from China* IDM at cmt. 5.  Vogue and Voma contend

that Commerce's actions in that case mean that Commerce can rely on the statements pertaining to non-use to find non-use in this case as well.  Consol. Pls. Br. at 1-2 (citing *MAE from China* IDM at cmt. 5).[16]  In addition, the parties state: "*VSE from China* shows that EBCP non-usage can be readily assessed and *MAE from China* shows that non-usage can readily be verified – regardless of the number of companies involved and whether they are affiliated."  *Id.* at 28.  Vogue and Voma also raise *Risen Energy*, in which Commerce requested a voluntary remand "so that Commerce [could] consider whether its evolving practices with respect to the {EBCP} would change the outcome in th[at] case."  *Id.* at 8-9 (emphasis omitted) (quoting Def.'s Mot. for Voluntary Remand (Mar. 28, 2022) at 2, 6-8, *Risen Energy Co. v. United States*, Consol. Court No. 20-03912, ECF No. 83) (arguing that the remand request shows that Commerce "recognize[s] that *MAE from China* . . . presents a changed practice that precludes further application of AFA to countervail the EBCP").

By contrast, the Government argues that the lack of non-use certifications in this case differentiates it from *MAE from China*.  Def. Br. at 20 (citing Remand Results at 30; *MAE from China Preliminary Determination*, 86 Fed. Reg. 41,013 and accompanying PDM at 21).  Further, the Government stresses that unlike in this case, documentation on the record in *VSE from China* demonstrated that the customer, the parent of the respondent, received all pertinent financing for "specific purposes not related to the

---

[16] *MAE from China* included customer self-certifications of EBCP non-use; Commerce also sought information about the respondents' U.S. customers in that case through supplemental questionnaires.  *MAE from China* IDM at 49-50.

**PUBLIC VERSION**

export of goods from China."  *Id.* at 19-20 (quoting *VSE from China* IDM at 22-23); *see also* Def.-Intervenor Br. at 11.  The USW states also that Longyue did not provide or detail any customer responses.  Def.-Intervenor Br. at 6 (citing Remand Results at 9; Longyue QR at 25); *see* Remand Results at 9.  *But see* Consol. Pls. Br. at 14 (quoting Remand Results at 9) (citing Longyue QR, Ex. 24 at 11/14); Longyue QR, Ex. 24 at 11.[17]

The USW adds that, "in both [*VSE from China* and *MAE from China*], Commerce was explicitly clear that these cases did not represent a change in its practice."  Def.-Intervenor Br. at 9 (citing *VSE from China* IDM at 20; *MAE from China* IDM at 49); *see id.* at 15 (citing *Hyundai Elec. & Energy Sys. Co. v. United States*, 15 F.4th 1078, 1089 (Fed. Cir. 2021)).  The USW represents that in *VSE from China* Commerce also rejected one respondent's claim that it was "unaware" of any customer EBCP use.  Def.-Intervenor Br. at 10 (quoting *VSE from China* IDM at 20-21).  The USW notes that the same statement of "unawareness" is on the record in this case.  *Id.*[18]

---

[17] Longyue included an email from its customer [[                                        ]], which was translated as "[[                                        ]]."  Longyue QR, Ex. 24 at 11.

[18] The USW adds that the respondents certified that "they had not been contacted regarding the program"; however, the USW argues that the respondents' statements "were not based on actual knowledge."  Def.-Intervenor Br. at 7 (citing *Cooper I*, 45 CIT __, Slip Op. 21-141 (Oct. 12, 2021) at 31-32.  The USW argues further that the GOC's noncooperation prevents Commerce from knowing the impact of such statements.  *Id.* at 7-8.

**PUBLIC VERSION**

The Government submits that the respondents' statements pertaining to non-use are unverifiable and unreliable also due to the lack of GOC cooperation and the lack of customer signatures.  Def. Br. at 11 (citing Remand Results at 21), 17 (citing Remand Results at 37).  The USW also argues: "In situations such as here where the record lacked any information from a customer (or even contained some but not full information from customers), Commerce has consistently applied as facts available the inference that the program was used . . . ."  Def.-Intervenor Br. at 12.  Without customer self-certifications, the USW argues, Commerce has not issued supplemental questionnaires about the EBCP before.  *Id.* at 13 (citing *Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Final Results of Countervailing Duty Administrative Review and Rescission of Review, in Part; 2019*, 87 Fed. Reg. 13,704 (Dep't of Commerce Mar. 10, 2022) and accompanying IDM (Dep't of Commerce Mar. 3, 2022) at 17; *Multilayered Wood Flooring*, 86 Fed. Reg. 73,244 and accompanying IDM at 19).

The Government asserts that *Risen Energy* involved distinct facts and that the case is still pending before the Court.  Def. Br. at 20-21 (citing Def.'s Mot. for Voluntary Remand, *Risen Energy Co.*, Consol. Court No. 20-03912, ECF No. 83); *see id.*; *see also* Def.-Intervenor Br. at 13 (citing *Risen Energy Co.*, 46 CIT __, Slip Op. 22-44 at *5 (May 12, 2022); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Results of Countervailing Duty*

**PUBLIC VERSION**

*Administrative Review; 2017*, 85 Fed. Reg. 79,163 (Dep't of Commerce Dec. 9, 2020)

accompanying IDM (Dep't of Commerce Nov. 27, 2020) at 32).[19]

       In addition, the Government notes that Commerce applied AFA pursuant to 19

U.S.C. § 1677e(b) based on a factual inference made pursuant to subsection (a).  Def.

Br. at 4-5.  The USW adds that Commerce need not "undertake considerable efforts to

collect information to fill in the gap" left by the GOC's noncooperation.  Def.-Intervenor

Br. at 2.

       **C.      Analysis**

       In *Cooper I*, 45 CIT at __, 539 F. Supp. 3d at 1327-28, the court held that

Commerce identified the gap in the record and explained the reason that the missing

information on loan disbursement and partner and correspondent banks was critical.

Therefore, this section addresses the remaining issues of whether Commerce on

remand: (1) explained the reason that the missing information pertaining to the loan

threshold was critical to verification; and (2) articulated an explanation as to the reason

that Commerce could not otherwise fill the gap in the record by explaining the reason

---

[19] The court granted the remand request in *Risen Energy* with instructions to attempt to verify or explain the reason that the court "should not provide some form of equitable relief."  *Risen Energy Co. v. United States*, 46 CIT __, __, 570 F. Supp. 3d 1369, 1373 (2022).  The remand results were filed on October 7, 2022.  Redetermination Pursuant to Court Remand Order, *Risen Energy Co. v. United States*, Consol. Court No. 20-03912, ECF Nos. 93-94.  There, Commerce removed the EBCP subsidy rate for one respondent, which had "provided complete information on behalf of its sole importer/customer in response to the EBCP questionnaire."  *Id.* at 6-7.  However, Commerce continued to apply AFA to the other respondent, which had provided the information requested through a supplemental questionnaire for only half of its customers.  *Id.* at 7-9.

**PUBLIC VERSION**

that "other information, on the record or accessible by respondents, [was] insufficient or

impossible to verify." *Jiangsu Zhongji Lamination Materials Co.*, 43 CIT at __, 405 F.

Supp. 3d at 1333 (citing *Changzhou I*, 42 CIT at __, 352 F. Supp. 3d at 1326-27).

> **1.      Whether Commerce explained the reason that the withheld information as to the threshold requirement and the 2013 revisions was necessary to verify non-use**

The court addresses first whether Commerce provided an explanation on remand

as to the reason that the missing information on the threshold requirement was

necessary to verify non-use.

As the court noted previously, "Commerce's limited resources may constitute a

legitimate constraint to verification."  *Cooper I*, 45 CIT at __, 539 F. Supp. 3d at 1332

(citing *Torrington Co. v. United States*, 68 F.3d 1347, 1351 (Fed. Cir. 1995)); *see also*

*Guizhou VI*, 45 CIT at __, 523 F. Supp. 3d at 1369-70 ("Although Commerce appears to

have the authority to verify a [third party's] response as accurate . . . the verification

process generally entails a significant burden on Commerce and the responder may

choose not to allow verification." (quoting *CS Wind Vietnam Co. v. United States*, 41

CIT __, __, 219 F. Supp. 3d 1273, 1284 (2017)).  Moreover, "[i]t is within the discretion

of Commerce to determine how to verify . . . and due deference will be given to the

expertise of the agency."  *Carlisle Tire & Rubber Co. v. United States*, 9 CIT 520, 532,

622 F. Supp. 1071, 1082 (1985) (citing *Zenith Radio Corp. v. United States*, 9 CIT 110,

112, 606 F. Supp. 695, 698 (1985), *aff'd*, 783 F.2d 184 (Fed. Cir. 1986)).  Nonetheless,

"Commerce must explain the basis for its decisions; while its explanations do not have

**PUBLIC VERSION**

to be perfect, the path of Commerce's decision must be reasonably discernable to a reviewing court."  *NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009).

Before the remand, Commerce stated that information about the threshold requirement is "critical to understanding how the [EBCP] operates, and[,] thereby[,] is also critical to Commerce's ability to verify and determine usage of this program."  IDM at 19.  The court noted that statements at oral argument as to the potential necessity of the threshold requirement to narrow and make feasible Commerce's investigation "may amount to a compelling reason" but that "a post-hoc explanation by defendant at oral argument cannot cure the lack of explanation by Commerce in the IDM."  *Cooper I*, 45 CIT at __, 539 F. Supp. 3d at 1332 (citing *State Farm*, 463 U.S. at 50).  Accordingly, in *Cooper I*, the court concluded that Commerce failed to "state the *reason* that the information on the threshold is 'critical' to verification."  *Id.*

In the Remand Results, Commerce presented three reasons that the USD 2 million threshold is "critical to Commerce's understanding of the program."  Remand Results at 6.  First, if the threshold remains in place, it "greatly limits the universe of potentially relevant loans . . . and can significantly assist [Commerce] in targeting [its] verification of non-use."  *Id.*  Second, if the threshold is no longer in place, Commerce will face greater "difficulty of verifying loans without any such parameters limiting the loans to scrutinize."  *Id.*  Third, "if the program was no longer limited to USD 2 million contracts, but Commerce were to accept the GOC's assertion that the program was

limited, [Commerce] could mistakenly limit [its] verification to only larger loans received

by the customer, and potentially miss smaller [EBCP] loans." *Id.*  In addition,

Commerce stressed that the 2013 revisions might "contain additional information that

might guide Commerce to the relevant [information]." *Id.* at 7.

Following the filing of the Remand Results, Cooper Tire and CTRC argued at oral

argument that Cooper Tire has only one U.S. customer that imports the subject

merchandise: its parent company, CTRC.  Oral Arg. Tr. at 14:2-7.  The Government

replied that it had not heard before that Cooper Tire's U.S. export customers "could only

be a universe of one." *Id.* at 15:15-21.[20]  In its affiliation response, Cooper Tire stated:

"CKT exported subject tires that it produced through CTRC to the United States during

the [POR]."  Letter from Pepper Hamilton LLP to Sec'y of Commerce, re: *Certain*

*Passenger Vehicle and Light Truck Tires from the People's Republic of China*/CKT

Response to Sec. III of the Initial Quest. Identifying Affiliated Companies (Mar. 15,

2019) ("Cooper Tire Affiliate Resp.") at III-3, CR 6, PR 61.  In addition, in its initial

questionnaire, Commerce asked Cooper Tire to "[p]rovide a list of all of the customers

to which you exported during the POR, along with the shipment addresses for these

customers."  Cooper Tire QR at III-31.  In an exhibit, entitled "CKT's Export Customers

---

[20] As stated *supra*, Commerce based its Remand Results in part on there being the
following number of U.S. customers: [[    ]] for Cooper Tire and [[    ]] for Longyue.
Remand Results at 18 (citing Cooper Tire QR, Ex. 18, CR 36, PR 89; Longyue QR, Ex.
23, CR 69, PR 98).  However, the Government acknowledged later the number of U.S.
customers that Cooper Tire presented at oral argument.  *See* Def.'s Resp. to Post-Arg.
Questions at 4, ECF No. 92.

**PUBLIC VERSION**

Consol. Court No. 20-00113                                                              Page 38

List During the POR," Cooper Tire listed [[                                        ]].  *Id.*, Ex. 18, CR

36, PR 89.  On the list, [[

                       ]].  *Id.*; *see* Pls.' Comments in Resp. to Suppl. Questions at 2 ("Since

CTRC is the only U.S. importer/customer for ECB [sic] non-use verification purposes,

there is only one customer at issue.").[21]

        With respect to Cooper Tire, the court concludes that Commerce did not explain

adequately the necessity of the threshold information to verify non-use because

Commerce appears to have misidentified the number of customers at issue for Cooper

Tire.  *See* Remand Results at 18.  If Cooper Tire exported to only one U.S. customer,

CTRC, which was already a party to the action, as the record supports and the

Government concedes, the need for the threshold requirement to limit appropriately

Commerce's inquiry would not appear to be necessary.  *See* Cooper Tire QR, Ex. 18;

Cooper Tire Affiliate Resp. at 2; *see also* Def.'s Resp. to Post-Arg. Questions at 4.  If

Commerce needed to look through the financial and loan-related information of only one

customer, the need for information about a threshold would appear to dissipate because

the "universe of potentially relevant loans" during the POR might already be

manageable with respect to Cooper Tire and CTRC.  Remand Results at 6.

        By contrast, with respect to Longyue, the court concludes that Commerce

provided an adequate explanation as to the necessity of the threshold information.

---

[21] Longyue provided "the names and full address [sic] of all export customers in the
United States to the GOC."  Longyue QR at 24.

**PUBLIC VERSION**

Consol. Court No. 20-00113                                                    Page 39

Commerce explained the reasons that knowing whether the threshold information is still

in place would allow Commerce to determine whether to tailor its verification and to

verify reliably within its "limited time available."  *See id.* at 6-7.

Finally, the court agrees with Commerce's assertion on remand that its

explanation as to the necessity of partner and correspondent bank information supports

Commerce's application of AFA irrespective of the necessity of the threshold

information.  *See id.* at 8 (submitting that the court's finding in *Cooper I* on

partner/correspondent banks is "sufficient to support the AFA finding").  As stated in

*Cooper I*, the court concluded that Commerce explained the necessity of certain loan

disbursement, and partner and correspondent bank, information to Commerce's

verification of non-use in this case.  45 CIT at __, 539 F. Supp. 3d at 1334.  Commerce

argued that "the Court's finding regarding the intermediary banks alone is sufficient to

support the AFA finding."  Remand Results at 8.

Consequently, the court concludes that Commerce explained the necessity of the

threshold information as to Longyue but not as to Cooper Tire.  However, the court does

not remand for further action on this issue because, as stated above, Commerce's

application of AFA did not depend on resolution of the necessity of the threshold

information.[22]

---

[22] The court addresses *infra* Section II.C.2.f whether Commerce adequately explained
the necessity of other information that might be in the 2013 revisions to verify the other
information on the record.  *See generally* IDM at 19 n.69 ("The record indicates that the
elimination of the USD 2 million threshold is one of the changes effected by the 2013
Revisions." (citing GOC SQR at 7-8)).

**PUBLIC VERSION**

####    2.    Whether Commerce explained that only the withheld information could fill the gap in the record

In this section, the court examines whether Commerce's determination that no other information on the record is verifiable is supported by substantial evidence.  *See* Remand Results at 11; IDM at 20.  In the original review, Commerce explained that it could not verify claims of non-use without the withheld information from the GOC about the "internal administration" of the EBCP.  IDM at 20.  However, the court concluded that Commerce had failed to analyze or explain whether the responses were sufficient to fill the gap left by the GOC's noncooperation and demonstrate non-use.  *Cooper I*, 45 CIT at __, 539 F. Supp. 3d at 1336; *see id.* (quoting *Guizhou VI*, 45 CIT at __, 523 F. Supp. 3d at 1367).  On remand, the court concludes that Commerce explained reasonably that only the withheld information can fill the gap in the record in this case because no other information on the record is sufficient or possible to verify.  *See Jiangsu Zhongji Lamination Materials Co.*, 43 CIT at __, 405 F. Supp. 3d at 1333 (citing *Changzhou I*, 42 CIT at __, 352 F. Supp. 3d at 1326-27).

To reach this conclusion, the court: (a) takes note of respondents' responsibility to create the record; (b) describes that respondents' claims are unsupported by customer non-use certifications; (c) takes account of Commerce's varying and evolving decisions over the last 18 months in response to the GOC's noncooperation and this Court's decisions; (d) applies Commerce's varying and evolving practice to this case; (e) evaluates Commerce's failure to consider certain contrary evidence; and (f) addresses Commerce's explanation for its determination.

PUBLIC VERSION

### a.      Respondents' responsibility to create the record

The GOC has been consistently nonresponsive and uncooperative in EBCP

investigations.  *See, e.g.*, IDM at 18-20; *Guizhou VI*, 45 CIT at __, 523 F. Supp. 3d at

1326.  This posture frustrates Commerce's ability to investigate, places exporters in a

difficult and impracticable position and creates issues, such as the ones present in this

case, regarding Commerce's consideration of other information on the record.

However, the court considers Commerce's determination to be supported by substantial

evidence based on the applicable legal framework.

Namely, the U.S. Court of Appeals for the Federal Circuit has stated that "the

burden of creating an adequate record lies with interested parties and not with

Commerce." *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1337-38 (Fed. Cir.

2016) (alterations in original) (quoting *QVD Food Co. v. United States*, 658 F.3d 1318,

1324 (Fed. Cir. 2011) (citations omitted)).  Further, this court has noted: "The purpose of

verification is to verify the accuracy of information already on the record, not to continue

the information-gathering stage of [Commerce's] investigation . . . ." *Borusan*

*Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 39 CIT __, __, 61 F. Supp.

3d 1306, 1349 (2015) (internal citations omitted), *aff'd sub nom. Maverick Tube Corp. v.*

*United States*, 857 F.3d 1353 (Fed. Cir. 2017); *see* 19 C.F.R. § 351.307(d).  Still,

"[w]hen Commerce has access to information on the record to fill in the gaps created by

the lack of cooperation by the government, as opposed to the exporter/producer . . . it is

expected to consider such evidence." *GPX Int'l Tire Corp.*, 37 CIT at 58-59, 893 F.

**PUBLIC VERSION**

Consol. Court No. 20-00113                                                    Page 42

Supp. 2d at 1332; *see RZBC*, 2016 WL 3880773, at *2 (quoting *GPX Int'l Tire Corp.*, 37

CIT at 58-59, 893 F. Supp. 2d at 1332); *see also Fine Furniture*, 36 CIT at 1212 n.10,

865 F. Supp. 2d at 1262 n.10 ("[A]n inference adverse to the interests of a non-

cooperating government respondent may collaterally affect a cooperative respondent.

While such an inference is permissible under the statute, it is disfavored and should not

be employed when facts not collaterally adverse to a cooperative party are available.").

In considering the evidence, Commerce assesses whether the evidence is verifiable

and, therefore, whether Commerce considers that the evidence may be used to confirm

non-use.  *See Guizhou VI*, 45 CIT at ___, 523 F. Supp. 3d at 1368 (quoting *Zhejiang

DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011) (citing

*Guizhou Tyre Co. v. United States*, 43 CIT ___, ___, 415 F. Supp. 3d 1335, 1343 (2019));

*see also Jiangsu Zhongji Lamination Materials Co.*, 43 CIT at ___, 405 F. Supp. 3d at

1333.

> **b.      Respondents' claims, which are unsupported by
>          customer non-use certifications**

In this case, the respondents did not provide customer certifications of non-use.[23]

*See generally* Cooper Tire QR; Longyue QR.  Instead, the parties each provided other

kinds of information in their questionnaire responses.  *See* Cooper Tire QR at III-31-III-

32, Ex. 18; Longyue QR at 24-25, Exs. 23-24.

---

[23] *See supra* note 11.

**PUBLIC VERSION**

Consol. Court No. 20-00113                                                                                    Page 43

Cooper Tire, for example, stated: "CKT did not apply for, use, or benefit from [the EBCP] during the POR."  Cooper Tire QR at III-31.  Further, Cooper Tire stated that it "is not aware that any of its customers applied for, used, or benefited from [the EBCP] during the POR," and noted that Cooper Tire did not assist or "perform any acts that in any way would permit these customers to receive any export buyer credits."  *Id.*  Cooper Tire also stated that it "believe[d] that it is impossible" that any of its customers used the EBCP since none contacted Cooper Tire to provide "information required to obtain an export buyer's credit."  *Id.* at III-32.  Cooper Tire also submitted "CKT's list of all the export customers during the POR."  *Id.* at III-31; *see id.*, Ex. 18.

For its part, Longyue stated that it emailed its U.S. customers to "determine whether [they] used [the EBCP]."  Longyue QR at 25.  Longyue provided outgoing emails to [[        ]] customers and one response — an email from its customer [[                              ]], which was translated as "[[

        ]]."  *Id.*, Ex. 24 at 11.[24]  Further, Longyue presented as evidence of non-use that it had never been contacted by the China Export-Import Bank, other state owned or controlled banks or any of Longyue's export customers to provide necessary assistance with their EBCP applications.  *Id.* at 25.  In addition, Longyue also stated that it did not purchase export credit insurance, which, it maintained, is required in support of

---

[24] The exhibit does not include emails to [[
                                                ]], identified on Longyue's U.S. Customer List.  Longyue QR, Ex. 24; *see id.*, Ex. 23.

**PUBLIC VERSION**

Consol. Court No. 20-00113                                                                 Page 44

an EBCP application.  *Id.* (citing *id.*, Ex. 25, CR 69, PR 98).  Longyue also submitted a

list of all of its U.S. export customers.  *Id.*, Ex. 23.

> ### c.   Commerce's varying and evolving decisions over the last 18 months in response to the GOC's noncooperation and this Court's decisions

Given the GOC's noncooperation, Commerce recently began seeking to clarify

its practice with respect to EBCP cases in which the GOC is uncooperative.  *See, e.g.*,

*MAE from China* IDM at cmt. 5; *VSE from China* IDM at cmt. 2.  Commerce explained

recently that *MAE from China* and *Forged Steel Fittings from the People's Republic of*

*China* are "examples of [Commerce's] change in practice," in which Commerce will

issue supplemental questionnaires if a respondent has provided complete customer

certifications of EBCP non-use.  Redetermination Pursuant to Court Remand Order at

18-19, *Risen Energy Co. v. United States* ("*Risen Energy* Remand Results"), ECF Nos.

93-94 (citing *MAE from China* IDM at cmt. 5; *Forged Steel Fittings from the People's*

*Republic of China: Final Results of Countervailing Duty Administrative Review; 2019*, 87

Fed. Reg. 35,498 (Dep't of Commerce June 10, 2022) and accompanying IDM (Dep't of

Commerce June 3, 2022) at cmt. 2).

In *VSE from China*, another recent determination, Commerce reached different

results with respect to applying AFA to two differently situated respondents.  *See VSE*

*from China* IDM at 22-23.  Commerce applied AFA to one respondent, which provided

customer declarations of non-use and "claimed to be unaware that any U.S. customer

[used the EBCP]."  *Id.* at 19-20 (citing Letter from Perkins Coie LLP to Sec'y of

**PUBLIC VERSION**

Consol. Court No. 20-00113                                                    Page 45

Commerce, re: Certain Vertical Shaft Engines Between 99cc and Up To 225cc, and

Parts Thereof, from China; CVD Investigation; Chongqing Zongshen Sec. III Resp.

(June 22, 2020) at Vol. I at 28, Vol. VII at 26, Ex. I-18, and Ex. VII-16, bar code

3989840-01).  However, Commerce applied facts available to the other respondent,

which had only one U.S. customer, its parent company, for which the respondent

provided financial documentation, including a financing "reconciliation," a consolidated

balance sheet for the parent company and lending agreements, *id.* at 22 (quoting

Chongqing Kohler's Letter, re: Certain Vertical Shaft Engines Between 99cc and up to

225cc, and Parts Thereof from the People's Republic of China: Letter in Lieu of Case

Brief (Dec. 8, 2020) at 4), and a signed customer declaration of non-use, Letter from

Wiley Rein LLP to Sec'y of Commerce, re: *Certain Vertical Shaft Engines Between 99cc*

*and up to 225cc, and Parts Thereof, from the People's Republic of China*: Resp. of

Chongqing Kohler Engines Ltd. and Kohler (China) Investment Co. Ltd. to Sec. III

Quest. (June 18, 2020) ("Chongqing Kohler QR") at 14-18, Ex. EBC-3, bar code

3988554-01.  For the latter respondent, Commerce concluded that the "extensive

documentation" for the respondent's one customer — its parent company — allowed

Commerce to find non-use based on facts available:

> [A]fter carefully considering arguments from the parties, we have
> determined that, due to its exceptional relationship with its sole U.S.
> customer (its parent company), Chongqing Kohler was able to provide
> unique evidence, which pertains to "loan instruments" and reconcilable
> documentation indicative of the scope of Kohler Co.'s financing during the
> POI, and which appears to indicate that the finance instruments have
> specific purposes not related to the export of goods from China.

**PUBLIC VERSION**

Consol. Court No. 20-00113                                              Page 46

*VSE from China* IDM at 22-23 (citing Chongqing Kohler QR at 17, Ex. 5, and Exs. EBC-6a- EBC-6d).  Commerce did not verify the information but was still able to find non-use for the latter respondent.  *Id.* at 23.

      *VSE from China* is inapposite even if Cooper Tire exported the subject merchandise to only one U.S. customer — its parent company, CTRC.  In *VSE from China*, the latter respondent provided "extensive documentation," as described above, about the financing of the parent company to satisfy Commerce that the customer did not use the EBCP.  *VSE from China* IDM at 22-23.[25]  No such documentation exists on the record for CTRC in this case.  *See* Remand Results at 30.  Further, CTRC did not provide a customer certification, and Cooper Tire did not state that CTRC did not use the EBCP.  *Id.*[26]  Similarly, *VSE from China* is also inapposite to the court's consideration of Commerce's determination as to Longyue, which did not provide customer declarations and did not note in its questionnaire response that the company had any affiliated U.S. customers.  *See* Longyue QR at 24-25.

      Second, *MAE from China* supports Commerce's determination to continue to apply AFA in this case because in this case, unlike in *MAE from China*, the respondents

---

[25] The respondent also stated that its parent company did not use the EBCP, as supported by a signed customer declaration of non-use for its parent company. Chongqing Kohler QR at 15, Ex. EBC-3.

[26] Cooper Tire stated only that it "*believes* that it is impossible" that its customers used the EBCP.  Cooper Tire QR at III-32 (emphasis supplied).  Cooper Tire's statement of belief appears to have been based on the fact that Cooper was not contacted by any of its customers.  *See id.*

**PUBLIC VERSION**

did not provide customer certifications of non-use.  *Compare* Remand Results at 30,

*with MAE from China* IDM at cmt. 5.  In *MAE from China*, Commerce found non-use in a

circumstance in which the respondents provided customer certifications and,

subsequently, completed responses to requests for financing information.  *See MAE*

*from China* at cmt. 5.  There, Commerce found non-use of the EBCP for both of the

mandatory respondents "in recognition of court precedent."  *Id.* at 56.[27]  In that instance,

---

[27] Commerce's recurring use of this language is inappropriate.  *See, e.g.*, *MAE from China* IDM at 49-50, 55-56; *VSE from China* IDM at 23.  For instance, in *VSE from China*, Commerce reiterate[d] that the GOC's lack of cooperation with regard to numerous requests for information pertaining to the EBCP continues to leave Commerce with an incomplete understanding of the program" but "also recognize[d] that the court has directed Commerce in numerous decisions to consider whether any available information provided by respondents may be sufficient to fill the gap of missing record information in considering claims of non-use for the EBCP."  *VSE from China* IDM at 23 (citing *Clearon Corp. v. United States*, 44 CIT __, __, 474 F. Supp. 3d 1339, 1345-46, 1349, 1354 (2020)); *see supra* note 8; *see also Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019* ("*Solar Cells from China*"), 87 Fed. Reg. 40,491 (Dep't of Commerce July 7, 2022) and accompanying IDM (Dep't of Commerce June 29, 2022) at 22 ("[*MAE*] *from China* is an example of Commerce's accommodative efforts in its practice regarding the EBCP in light of the CIT litigation.").  Still, the court notes that the redetermination before the court does not raise this circumstance directly because the particular facts and, consequently, Commerce's determination on non-use in this case differ from the others discussed *supra*.  *See* Remand Results at 30, 41-42.

Commerce's obligation is to apply the statute: in this case, to determine that there is use or non-use based on Commerce's application to the record before it of the statute and regulations.  Ensuring access to information in accordance with the statute is a core function delegated to Commerce.  If Commerce disagrees with remand decisions of this Court, particularly on an issue of importance and one that recurs, Commerce's most appropriate recourse is to appeal a decision of the Court with which Commerce disagrees.  For Commerce to state that it "continue[s] to find that the GOC's non-(footnote continued)

**PUBLIC VERSION**

mandatory respondent LGMG provided a customer declaration of non-use for its one

U.S. export customer, its wholly owned subsidiary LGMG North America Inc.

("LGMGNA").  LGMG IQR at 38, Ex. I-37.  LGMG also provided, inter alia, a liability

subledger and statement of cash flows during the period of investigation for LGMGNA.

*Id.* at 39, Exs. I-28-I-29; *see id.* at 40.  In addition, mandatory respondent Dingli

provided customer declarations of non-use from its unaffiliated U.S. importers and

"company specific information" for its affiliated U.S. importer, such as an audited

financial statement detailing certain loan information.  Letter from Grunfeld, Desiderio,

Lebowitz, Silverman & Klestadt LLP to Sec'y of Commerce, re: *Dingli Initial Quest.*

*Resp.*: Countervailing Duty Investigation of Certain Mobile Access Equipment and

Subassemblies Thereof from the People's Republic of China (C-570-140) (POI: 2020)

(June 15, 2021) at 30, Exs. B-21b-B-21c, bar code 4133571-01; *see* Oral Arg. Tr. at

65:11-13 (noting that Dingli had two customers).  Thereafter, Commerce, "considering

court precedent," requested and received additional information from the mandatory

---

cooperation significantly impedes and prevents a complete verification of the EBC
program," but is generating a finding of non-use based on a "recognition of court
precedent" — and then for the Government not to appeal even a single decision of the
Court — serves poorly the objective of clarity and rigor in Commerce's application of law
as well as the objective of Commerce addressing what it has described as a lack of
cooperation by a government respondent that has left Commerce with an "incomplete
understanding" of a subsidy program.  *MAE from China* IDM at 56.

**PUBLIC VERSION**

Consol. Court No. 20-00113                                              Page 49

respondents and found ultimately non-use by both.  *MAE from China* IDM at 49-50, 55-56.[28]

Vogue and Voma observe that, following its determination in *MAE from China*,[29] Commerce appears to have verified EBCP use or non-use only if complete customer certifications have been provided.  Consol. Pls.' Resp. to Ct. Question at 2.  In such situations in which the GOC has been noncooperative, the Government concurs with Vogue and Voma: "[T]he receipt of voluntary non-use certifications from all United States customers is a prerequisite to Commerce's issuance of a supplemental questionnaire, and Commerce does not issue the supplemental questionnaire (and therefore does not attempt to verify) without the non-use certifications."  Def.'s Resp. to Post-Arg. Questions at 2; *see also* Def.-Intervenor's Answer to Ct.'s Post-Hr'g Questions at 2-4 (presenting six administrative determinations between May 6, 2022, and July 25, 2022, in which voluntary self-certifications were required before Commerce attempted to verify (citations omitted)).  Commerce reiterated this approach in its remand redetermination in *Risen Energy Co.*:

---

[28] In another administrative determination after *MAE from China*, however, Commerce applied AFA despite the record including: (1) the respondents' claims that they were unaware that any customers used the EBCP; (2) customer declarations of non-use, *Pentafluoroethane* IDM at 24; and (3) in the case of one respondent's customers, "a table of lending bank information indicating no buyers credit was received during the POI."  Sanmei New Subsidy Allegations Resp. at 2, Ex. N-2.  Commerce stated that information from the GOC was "critical to Commerce's ability to consider both respondents' claims of non-use."  *Pentafluoroethane* IDM at 24.

[29] Commerce completed its IDM in *MAE from China* on October 12, 2021.  *MAE from China* IDM at 1.

**PUBLIC VERSION**

> Now, in cases in which a respondent company has provided non-use certifications from *all* of its U.S. customers, Commerce will send a supplemental questionnaire to the respondent, seeking information on the loans received by its customer(s) during the relevant period.   If the respondent provides this information from its customer(s), Commerce will verify the customer(s)' information . . . or otherwise take into account the customer(s)' information.

*Risen Energy* Remand Results at 18-19.[30]

As one example, pursuant to a February 2022 court order in a case in which customer certifications were provided, *Both-Well I*, 46 CIT __, 557 F. Supp. 3d 1327, Commerce sought and received "a reconciliation of [the customers'] financing," *Both-Well (Taizhou) Steel Fittings, Co. v. United States* ("*Both-Well II*"), 46 CIT __, __, 589 F. Supp. 3d 1343, 1345 (2022).  Based on that information, Commerce declined to apply AFA, and the court sustained the remand redetermination.  *Id.* at __, 589 F. Supp. 3d at 1345-46.

For the foregoing reasons, Commerce's approach supports its determination to continue to apply AFA in this case because the respondents failed to provide information that is sufficient to fill the gap in the record or that would prompt the issuance of additional questionnaires to the respondents.  *See* Remand Results at 28-30 (addressing *VSE from China* and *MAE from China*).

### d.     Applying Commerce's varying and evolving practice to this case

Based on the facts of this case, a determination as to whether it is Commerce's practice to issue supplemental questionnaires only in situations in which voluntary

---

[30] The court has not yet addressed the *Risen Energy* Remand Results.

**PUBLIC VERSION**

customer certifications of non-use are already on the record — or whether Commerce

followed such a practice — is unnecessary.  Such a determination is unnecessary

because the respondents' customers did not provide such certifications or, with one

exception, did not demonstrate their willingness to participate in the investigation.  *See*

Remand Results at 2, 16, 20-21, 30 ("In the present case, we do not have non-use

certifications from the respondents' U.S. customers and, therefore, there is no indication

that they would participate in verification."), 41; Longyue QR, Ex. 24.[31]

Commerce's approach as outlined in *MAE from China* does not mean that a

respondent is entitled to receive a request from Commerce to provide customer

certifications of non-use or other financial information.  *See, e.g.*, *Risen Energy* Remand

Results at 19 ("[W]hen we do *not* receive voluntary non-use certifications from *all* U.S.

customers of a respondent, Commerce normally will *not* issue the supplemental

questionnaire or otherwise take steps to verify the respondent's claims of non-use."

(citing *Solar Cells from China*, 87 Fed. Reg. 40,491 and accompanying IDM at cmt. 1)).

The Court outlined a three-part framework in *Jiangsu Zhongji Lamination Materials Co.*,

43 CIT at __, 405 F. Supp. 3d at 1333, on when to apply AFA in circumstances in which

there is a noncooperating foreign government that fails to provide requested

information.  Commerce's approach to attempting verification of statements pertaining

to non-use is predicated upon the respondents voluntarily providing information on the

---

[31] Likewise, the court does not address whether any certain number of certifications
would be sufficient to prompt Commerce to seek additional information from parties.

**PUBLIC VERSION**

record that might fill the gap caused by the GOC's noncooperation.  *See* Remand

Results at 30 (citation omitted); Def.'s Resp. to Post-Arg. Questions at 2.

*MAE from China* is inapposite because in this case, unlike in that case, there

were no customer certifications on the record, thereby giving Commerce "no indication

that [the customers] would participate in verification."  Remand Results at 30 (stating

that Commerce considered such certifications to be a "prerequisite" in that case to

issuing supplemental questionnaires) (citation omitted).  Similarly, in *Risen Energy*, both

respondents provided customer non-use declarations.  *Risen Energy Co.*, 46 CIT at __,

570 F. Supp. 3d at 1373 (citing Risen Unaffiliated Supplier II, Sec. III Quest. Resp. (Jan.

6, 2020) at 23, Ex. 15, CR 277, PR 164; Quest. Resp. of JA Solar and Affiliates, Vol. 1

(Dec. 30, 2019), Ex. 25, CR 31-103, PR 132-38).  By contrast, in this case, neither

respondent provided signed customer certifications of non-use, and neither respondent

actually stated that their customers did not use the EBCP.  *See generally* Cooper Tire

QR at III-32; Longyue QR at 25.[32]

In addition, the statute does not require that Commerce ask the *respondents* for

supplemental information due to the *GOC's* noncooperation.  Commerce "shall promptly

inform *the person submitting the response* of the nature of the deficiency and shall, to

the extent practicable, provide *that person* with an opportunity to remedy or explain the

deficiency in light of the time limits established for the completion of investigations or

reviews under this subtitle."  19 U.S.C. § 1677m(d) (emphases supplied).  The

---

[32] *See supra* Section II.C.2 and note 26; *see also supra* note 11 and accompanying text.

**PUBLIC VERSION**

Consol. Court No. 20-00113                                                                                                       Page 53

deficiency that Commerce identified was with the *GOC's* response; Commerce did not

apply AFA based on the insufficiency of the *respondents'* submissions.  IDM at 18-20.[33]

Therefore, the language of the statute requires that Commerce give the GOC — not any

other party — an opportunity to remedy the deficiency.  *See* 19 U.S.C. § 1677m(d).  In

this case, Commerce provided that opportunity to the GOC through the issuance of a

supplemental questionnaire.  *See* Letter, re: Passenger Vehicle and Light Truck Tires

from the People's Republic of China: Suppl. Quest. for Gov't of the People's Republic of

China (June 24, 2019) at 2-3, PR 129; *see also* GOC SQR at 6-13.  *See generally*

*Qingdao Sea-Line Int'l Trading Co. v. United States*, 45 CIT __, __, 503 F. Supp. 3d

1355, 1361 (2021) ("Commerce may provide this notice and the opportunity to remedy

deficiencies through issuance of a supplemental questionnaire.").  The statute does not

require Commerce to request that respondents place additional information on the

record to fill the gap created by the *GOC's* noncooperation.  *See Torrington Co.*, 68

F.3d at 1351.

The interested parties could have but did not submit any additional information

on the record to support their claims of non-use.  *See Nan Ya Plastics Corp.*, 810 F.3d

---

[33] The Government raises, inter alia, another administrative determination that illustrates this point.  Def.'s Resp. to Post-Arg. Questions at 3 ("[A] lack of these complete certifications is not the basis on which Commerce is applying AFA." (quoting *Solar Cells from China* IDM at cmt. 1)).  *See generally Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1373 (Fed. Cir. 2014) ("Although it is unfortunate that cooperating respondents may be subject to collateral effects due to the adverse inferences applied when a government fails to respond to Commerce's questions, this result is not contrary to the statute or its purposes, nor is it inconsistent with this court's precedent.").

**PUBLIC VERSION**

at 1337-38 (quoting *QVD Food Co.*, 658 F.3d at 1324) (noting that the burden is on the

interested parties to create the record).  At the time that the respondents submitted their

initial questionnaire responses, the court had already heard cases in which respondents

had provided customer certifications.  *E.g.*, *Clearon Corp.*, 43 CIT at __, 359 F. Supp.

3d at 1357; *Changzhou I*, 42 CIT at __, 352 F. Supp. 3d at 1324; *Guizhou Tyre Co. v.

United States* ("*Guizhou I*"), 42 CIT __, __, 348 F. Supp. 3d 1261, 1271 (2018).  As

noted by the USW, "[t]his Court has recognized that the lack of customer certifications is

an important distinction in cases where it has upheld Commerce's application of AFA to

the EBC program."  Def.-Intervenor Br. at 14 (citing *Changzhou Trina Solar Energy Co.

v. United States* ("*Changzhou 2017*"), 41 CIT __, __, 255 F. Supp. 3d 1312, 1318

(2017)).  In addition, respondents in other cases have offered more in support for their

assertions prior to 2021.  *See, e.g.*, *Guizhou I*, 42 CIT at__, 348 F. Supp. 3d at 1271

(customer declarations); *Changzhou 2017*, 41 CIT at __, 255 F. Supp. 3d at 1318

(partial certifications).  Moreover, this Court has noted the importance of customer

certifications, which are a key distinction on which Commerce has relied in the past.

*See Changzhou 2017*, 41 CIT at __, 255 F. Supp. 3d at 1318 (citing *Countervailing Duty

Investigation of Certain Crystalline Silicon Photovoltaic Products from the People's

Republic of China: Final Affirmative Countervailing Duty Determination*, 79 Fed. Reg.

76,962 (Dep't of Commerce Dec. 23, 2014) and accompanying IDM (Dep't of

Commerce Dec. 15, 2014) at 93).

**PUBLIC VERSION**

In the *Risen Energy* Remand Results, Commerce notes that Commerce does not consider even partial certifications to be "complete gap-filling information." *Risen Energy* Remand Results at 19-20.  This treatment is consistent with the Court's treatment of incomplete certifications in the earlier cases described herein.  Therefore, Commerce would not have to take the next step of sending supplemental questionnaires in this case, even if Commerce's decisions since *MAE from China* comprise a new practice, as Commerce asserts in the *Risen Energy* Remand Results. *See id.*  On this record, and as related to past EBCP cases, Commerce's finding that the respondents did not provide information that would allow Commerce to find non-use is reasonable.

Moreover, given the record here, there is no indication that the respondents' customers were prepared to provide certifications or participate in verification. *Cf. Solar Cells from China* IDM at 23 (describing partial non-use certifications as insufficient and concluding that "partial information on non-use does not leave Commerce with a path towards further investigating, completely verifying, or ultimately determining non-use of this program by either respondent"); *VSE from China* IDM at 22-23 (noting, for one respondent's customer, extensive financial information).  Cooper Tire has just one U.S. customer, an affiliate, with which Cooper Tire submitted its initial questionnaire response, and for which it would have been particularly easy to provide more information as to the claims pertaining to non-use of the EBCP.  *See* Cooper Tire QR at 1-2, Ex. 18; Cooper Tire Affiliate Resp. at III-3.  That Cooper Tire did not provide any

**PUBLIC VERSION**

Consol. Court No. 20-00113                                                                Page 56

such information about CTRC lends support to Commerce's conclusion that "there is no indication that [CTRC] would participate in verification."  Remand Results at 30.

For the foregoing reasons, the court concludes that Commerce did not have an obligation to ask for the certifications.  As described, Commerce based its application of AFA on the GOC's noncooperation and not on any need for certifications from customers to verify the EBCP in the first place; rather, within the proper legal framework, Commerce considers certifications as information on the record that it could verify to fill the gap after concluding that other, necessary information has been withheld and that a party did not cooperate "to the best of its ability."  19 U.S.C. § 1677e(a)-(b); *see Jiangsu Zhongji Lamination Materials Co.*, 43 CIT at ___, 405 F. Supp. 3d at 1333.

e.      **Commerce's failure to consider certain contrary evidence**

Further, Vogue and Voma asserted at oral argument that Commerce failed to consider "contrary evidence" in the form of the one email response on the record from one of Longyue's customers.  Oral Arg. Tr. at 102:9-15; *see* Consol. Pls. Br. at 14 (quoting Remand Results at 9) (citing Longyue QR, Ex. 24 at 11/14).  On remand, Commerce stated incorrectly: "[T]here are no responses in the relevant exhibit."  Remand Results at 9.

Commerce's determination is supported by the record as a whole despite Commerce misstating the record as to the one email response from one U.S. customer.  *See* Oral Arg. Tr. at 102:3-4.  "It is well settled that principles of harmless error apply to the review of agency proceedings."  *Intercargo Ins. Co. v. United States*, 83 F.3d 391,

**PUBLIC VERSION**

394 (Fed. Cir. 1996); *see Prime Time Com., LLC v. United States*, Appeal No. 21-1783,

2022 WL 2313968, at *5, *7 (Fed. Cir. June 28, 2022) (concluding that "Commerce's

failure to consider [the appellant's] efforts to cooperate as an interested party was

harmless error" because the failure "would not disturb" the antidumping duty rate or

"entitle [the appellant] to a separate rate").

In addition, Commerce has explained previously as to the EBCP that an "email

[from a customer] does not confirm non-use and falls short of the type of certifications or

declarations provided by U.S. customers in other proceedings involving this program."

*Aluminum Foil from China* IDM at 31 (footnote omitted); *see also Certain Walk-Behind*

*Snow Throwers and Parts Thereof from the People's Republic of China: Final*

*Affirmative Countervailing Duty Determination*, 87 Fed. Reg. 17,987 (Dep't of

Commerce Mar. 29, 2022) and accompanying IDM (Dep't of Commerce Mar. 21, 2022)

at 25 (noting that a respondent provided only partial customer certifications).

In this case, Commerce mentioned emails as an example of the "little information

on the record" that Commerce cannot verify, IDM at 20: "While Commerce frequently

examines correspondence and communications at verification, it does so to confirm

assertions that do not rest on the complete absence of an event," Remand Results at

15.  Even if Commerce had sought to verify the one email, Commerce would have had

no other information from any other customer in this case and would have faced the

same issues with respect to third-party participation that Commerce discussed on

remand, as described above.  *Id.* at 14-15, 41; *see Universal Camera Corp. v. NLRB*,

**PUBLIC VERSION**

340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record *fairly detracts* from its weight." (emphasis supplied)); *see also Multilayered Wood Flooring from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019*, 87 Fed. Reg. 36,305 (Dep't of Commerce June 16, 2022) and accompanying IDM (Dep't of Commerce June 10, 2022) at 37 ("[G]iven the apparent unwillingness of most of [one respondent's] U.S. customers to participate, [Commerce] did not issue any additional questions or requests for loan data." (footnote omitted)).

In sum, Commerce's failure to consider the single email response, together with the fact that no customers provided certifications of non-use, is not evidence that fairly detracts from Commerce's conclusion because its reasoning and conclusions would not be affected by the one email response.[34]  *See* Remand Results at 2, 16, 30, 41; *Universal Camera Corp.*, 340 U.S. at 488; *Husteel Co. v. United States*, 39 CIT __, __, 98 F. Supp. 3d 1315, 1359 (2015) (quoting *Altx, Inc. v. United States*, 25 CIT 1100, 1117-18, 167 F. Supp. 2d 1353, 1374 (2001)); *see also Prime Time Com., LLC*, Appeal No. 21-1783, 2022 WL 2313968, at *7.

---

[34] The USW presents five Commerce determinations between September 10, 2021, and June 30, 2022, and one Commerce memorandum from July 16, 2021, describing that Commerce did not issue supplemental questionnaires in situations without full certifications, further bolstering the notion that one email response is insufficient to fill the gap and establish EBCP non-use.  Def.-Intervenor's Answer to Ct.'s Post-Hr'g Questions at 4-5, attach. 7 (citations omitted).

**PUBLIC VERSION**

### f.      Commerce's explanation for its determination

Finally, Commerce must also "explain the basis for its decisions."  *NMB Sing. Ltd.*, 557 F.3d at 1319; *see also State Farm*, 463 U.S. at 43 ("We will . . . 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'") (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974) (citing *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973) (per curiam)).  In the context of the EBCP, Commerce must explain that no other information on the record can fill the gap created by the noncooperation by the GOC.  *See Jiangsu Zhongji Lamination Materials Co.*, 43 CIT at __, 405 F. Supp. 3d at 1333.  In situations in which third parties are involved, the court has held previously that Commerce need not seek third-party information due to the unnecessary burden posed as to time constraints, accuracy and the inability to "compel" responses.  *CS Wind Vietnam*, 41 CIT at __, 219 F. Supp. 3d at 1279, 1284; *see also Guizhou VI*, 45 CIT at __, 523 F. Supp. 3d at 1372 (declining to conclude that "Commerce must attempt verification to conclude that verification is not possible or overly burdensome" (citing 19 U.S.C. § 1677e(a)-(b)).  *But see Guizhou Tyre Co. v. United States* ("*Guizhou III*"), 43 CIT __, __, 415 F. Supp. 3d 1402, 1405 (2019) (noting that Commerce must attempt to verify customer certifications of non-use before reaching such a conclusion).

Here, as described *supra* Section I, Commerce explained the reason that it would be unable to verify the respondents' statements without an understanding of whether the EBCP requires their involvement.  *See* Remand Results at 10, 12, 38; *see also*

**PUBLIC VERSION**

Consol. Court No. 20-00113                                                      Page 60

Cooper Tire QR at III-31-III-32, Ex. 18; Longyue QR at 24-25, Exs. 23-24.  Commerce

stated that "outdated" EBCP documentation did not allow Commerce to determine

whether usage by a customer of EBCP required a respondent to: (a) be aware of such

usage; (b) assist the customer in applying for EBCP benefits; or (c) purchase export

insurance as a condition of a customer being eligible for EBCP benefits.  Remand

Results at 7, 10, 12, 21, 38; *see id.* at 5 & n.13 (citing Letter from Pet'r, re: Third

Administrative Review of the Countervailing Duty Order on Certain Passenger Vehicle

and Light Truck Tires from the People's Republic of China – The USW's Comments on

and Submission of Rebuttal, Clarifying, and Correcting Factual Information to the Initial

Questionnaire Responses (May 3, 2019), Ex. 7) (noting an inconsistency raised in the

record about the continued existence of the threshold requirement).  The court

concludes that Commerce explained adequately that the above points that the

respondents provided are unverifiable without an understanding of the requirements of

the EBCP, such as in the 2013 revisions.

Commerce also explained adequately that information about the operation of the

EBCP from the respondents and their customers would be unreliable.  *See id.* at 16-17.

Further, Commerce stated that it would not "result in a reasonably reliable verification"

and would be unduly burdensome to "collect and analyze" all correspondence or loan

information from each of the customers without the withheld information about the

operation of the EBCP and the partner and correspondent banks.  *Id.* at 17-19.

**PUBLIC VERSION**

Commerce discussed the burden that it would face given the number of customers[35]

and the value of their sales, in addition to Commerce's inability to compel third-party

participation.  *Compare id.* at 14, 18-19, *with Guizhou VI*, 45 CIT at __, 523 F. Supp. 3d

at 1370 (noting that Commerce "did not articulate the burden and unreliability of working

directly with third parties").  In addition, Commerce insisted that a spot check of certain

customers would serve only as a "half measure[]" since, again, the record demonstrated

that Commerce did not have full information about the way that the EBCP works.

Remand Results at 33-34, 41.

Commerce reiterated, and the court agrees that, because the respondents did

not provide any customer certifications of non-use, it is unclear "whether any

communication ever took place between the respondents and their customers or

whether the non-use statements are based solely on assumptions about how the

program currently operates."  *Id.* at 20-21.  In addition, Commerce explained reasonably

that without certifications that show that the customers would be likely to participate,

without the ability to compel third-party participation and without the withheld

information, Commerce would not be able to conduct an accurate spot-check of

---

[35] The court addresses through its discussion of *VSE from China* and *MAE from China supra* Sections II.C.2.c and II.C.2.d the situation in which Cooper Tire may have had only one affiliated customer.  To the extent that such a situation impacts the overall number of customers for both of the respondents, the court notes that Commerce nonetheless adequately explained its conclusion through the discussion of the impact of the lack of other information, *see supra* Sections I.5 and I.6, and other facts about the value of sales and Commerce's inability to confirm whether the EBCP requires the respondents' involvement, as referenced in their questionnaire responses, *see* Remand Results at 10, 14, 16-19.

potentially relevant transactions.  *See id.* at 2, 14, 16, 25 (concluding that Commerce

"might very well be wasting [its] time looking at loans that could not even have been

offered under the EBCP" because Commerce "lack[s] the requested information . . . or

any other parameters that would delimit the correct set of loans"), 30 (addressing *VSE*

*from China* and *MAE from China*), 41.

        In conclusion, Commerce's determination to apply AFA due to the lack of other

verifiable information on the record to fill the gap is reasonable and supported by

substantial evidence.  *See* IDM at 20; Remand Results at 30.  Commerce explained

adequately the reason that the other facts on the record do not fill the gap to establish

non-use of the EBCP.  *See Jiangsu Zhongji Lamination Materials Co.*, 43 CIT at __, 405

F. Supp. 3d at 1333 (internal citations omitted).

### CONCLUSION

*Ford v Ferrari*, directed by James Mangold, is a 2019 sports drama based on the

true story of automotive designer Carroll Shelby and race car driver Ken Miles in their

quest to lead Ford Motor Company to victory over Scuderia Ferrari at the 1966 *24*

*Hours of Le Mans* race.  Following Miles' untimely death, Shelby approaches Miles'

home to visit his widow Mollie and brings along a wrench that Miles had once thrown at

Shelby before a race.  Before he reaches the house, Shelby sees Miles' son Peter.

They have a somber conversation, in which they share the following exchange:

        Carroll Shelby (portrayed by Matt Damon): "I came to say hello, check in on her

and . . . then I started thinking that sometimes . . . words . . . just . . . ar-are not useful.

**PUBLIC VERSION**

Consol. Court No. 20-00113                                                                                    Page 63

Tools are useful 'cause you can make stuff with 'em and you can fix stuff with 'em.

Here."

       Peter Miles (portrayed by Noah Jupe), accepting the wrench that Shelby offers:

"Thanks."[36]

* * *

       For the foregoing reasons, Commerce's Remand Results are supported by

substantial evidence and comply with the court's instructions in *Cooper I*.  The court

sustains the Remand Results.  Judgment will enter accordingly.


                                                /s/     Timothy M. Reif
                                              Timothy M. Reif, Judge


Dated: December 8, 2022
       New York, New York

---

[36] FORD V FERRARI (20th Century Fox 2019).